No. 33,370

Susie Evans, Widow of Joe Evans, Deceased, as Claimant, *Appellee*, v. Western Terra Cotta Company, Respondent, and Standard Accident Insurance Company, Insurance Carrier, *Appellants*.

(67 P. 2d 426)

Opinion filed May 8, 1937.

*Lee Judy,* of Kansas City, for the appellants.

*John P. Carr* and *A. M. Etchen,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was a workmen's compensation case. Claimants are the dependent widow and children of Joe Evans, deceased, who for many years was an employee of the Western Terra Cotta Company. All questions entitling claimants to an award were stipulated except whether the death of the workman was the result of accidental injury arising out of and in the course of his employment with respondent. He worked alone at night, from 5:30 o'clock in the evening to 6 o'clock in the morning. One of his duties was to shake down the grates of the ovens. It appears he had had a hernia for several years, but that it had not interfered with his work. On the night of May 5, 1936, while at his work, his hernia became strangulated. He was taken to a hospital, where an operation was performed. He died on May 16, 1936, of a postoperative thrombosis. The compensation commissioner denied compensation. Claimants appealed to the district court. The court, after considering the evidence and argument of counsel, found—

". . . that on the 5th day of May, 1936, said Joe Evans met with personal injury by accident arising out of and in the course of his employment with said respondent, consisting of left inguinal hernia as the result of a strain, and was at said time taken from the premises of said respondent to a hospital, and a surgical operation performed upon him, consisting of a herniotomy; that said herniotomy was made necessary by reason of said strangulated hernia;

that said Joe Evans died on the 16th day of May, 1936, and that the cause of his death was a coronary occlusion, which was caused by said surgical operation."

Compensation was awarded accordingly. The respondent and its insurance carrier have appealed, and contend there is no substantial, competent evidence upon which to base the findings of the district court.

It is not seriously contended that the injury did not arise in the course of his employment. That term relates to time and place. (*Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 200, 34 P. 2d 542.) Appellants contend the evidence is insufficient to show that it arose "out of" his employment. These words point to origin of the injury and require a showing of some causal connection between the injury and the employment. (See case *supra*.) This does not mean there must be an eyewitness to the injury. If so, frequently one working alone, or his dependents, would be denied compensation when otherwise they should receive it. Like any other fact in a civil action, the injury and how it occurred may be shown by circumstantial evidence, and this need not be of such definite character as to exclude every other reasonable conclusion. (*Kirkpatrick v. Yeamans Motor Co.*, 143 Kan. 510, 513, 54 P. 2d 960.) Strangulation of an existing hernia is considered a definite accident. (Kessler, Accidental Injuries, p. 404.)

The evidence tending to support the court's finding that the injury arose out of the employment may be summarized as follows: The workman had a hernia which had not prevented his working. There is no evidence that it had been strangulated previously. It was a part of his duties to stoke the grates of the ovens. On the night of May 5, while he was on duty performing his usual work, his hernia became strangulated. He suffered a great deal of pain. In some way, not disclosed by the record, his son, who had studied to be a physician and was an interne at the hospital, learned that his father was sick and went to see him; examined him, and found a large mass in his left groin; called his father's employer to have someone take his place, and took him to the hospital. There Doctor Bourke had charge of the case. He found the patient suffering from a completely strangulated hernia of very recent date. There was a lot of abdominal viscera pushed into the hernial sac. It was necessary to operate at once. This he did, with the assistance of Doctor Regier. The patient gave Doctor Bourke a history of how he was injured, but this history is not disclosed by Doctor Bourke's testi-

mony. From his examination and operation Doctor Bourke was of the opinion that hernia existed before the strangulation occurred. He found it to be a complete strangulation. One could not walk around long with such a completely strangulated hernia. The strangulation might have existed a day or two. The quantity of abdominal viscera in the hernial sac probably made it appear older than it was. This strangulation could have been caused by an impact in the abdomen which pushed it out, or by strain of the abdominal muscles. The force or strain on the abdominal muscles from shaking down the grates of the ovens would be sufficient to cause the strangulation, especially if one were in a stooped position in order to shake the grates. Doctor Bourke further testified that on May 16 the patient died of coronary occlusion resulting from the operation; that this cause of death is frequently spoken of as a post-operative thrombosis. Coronary occlusion is a stopping up of the coronary artery, which is the artery which supplies the heart with blood, by a thrombus or embolism some place in the system carried by the blood stream into that artery. They occur from a trauma of the blood vessels surrounding the field of operation, and are carried in the blood stream to the seat of destruction, whether it is in the brain, or the lungs, or the heart. The doctor explained that when an operation is performed nature throws out a certain amount of constituencies in the blood to take care of the coagulation of the blood vessels that are injured or traumatized at the time. About the tenth day after the operation those things are liberated and get into the blood stream and are carried to various parts of the body. There is medical evidence that while fatal results occur in a comparatively small percent of operations, they may occur after any major operation. Doctor Bourke was definitely of the opinion that the coronary occlusion, which was the immediate cause of the death of the workman, was from a thrombosis naturally following the operation. Doctor Bourke made out the death certificate which, among other things, contained statements 23 and 24, as follows:

"23. If death was due to external causes (violence) fill in also the following:

"Accident, suicide, or homicide? *Accident.* Date of injury *5-3-1936.*

"Where did injury occur? *Place of occupation.* (Specify city or town, county and state.)

"Specify whether injury occurred in industry, in home, or in public place. *Western Terra Cotta Co.*

"Manner of injury. *Strangulated hernia.*

"Nature of injury. *Strain.*

"24. Was disease or injury in any way related to occupation of deceased? *Yes.*

"If so, specify. *Usual line of work.*

"(Signed) *L. S. Bourke, M. D.*

"(Address) *City."*

Our statute (G. S. 1935, 65-144) provides that the death certificate, or a properly certified copy thereof, "shall be prima facie evidence in all courts and places of the facts stated therein." We think this evidence was sufficient to sustain the finding of the trial court that the workman's injury arose out of his employment, especially in view of the death certificate and the statute, and in view of the fact that there was no evidence tending to show it arose in any other manner.

It was the function of the trial court to consider the evidence and draw the reasonable inferences and conclusions therefrom. Reviewing the trial court's findings, we are concerned only with evidence which supports, or tends to support, the findings of the trial court. (*Smith v. Cudahy Packing Co.*, 145 Kan. 36, 64 P. 2d 582.) It is also well settled that death resulting from an operation, necessitated by an injury, is compensable as death resulting from injury. (Kessler, Accidental Injuries, p. 408; *Bidnick v. Armour & Co.*, 113 Kan. 277, 214 Pac. 808.)

Two other matters mentioned by appellants will be noted. The workman's son, who was an interne at the hospital, several days after his father's death made up on some of the hospital blanks what purported to be a hospital record of his father's illness and the history connected therewith, and these were later changed in some particulars. Appellants properly censure him for doing so. However, the finding of the trial court is not predicated upon any of these records, or the changes made therein.

In the claim for compensation filed it is stated that the workman first sustained his hernia in September, 1934. There is quite a little in the evidence as to how long prior to May 5, 1936, the workman had a hernia. That becomes immaterial. The record clearly shows the workman had hernia for as long as two or three years, possibly as long as eight or nine years, before May 5, 1936. The judgment is not predicated upon the beginning time of the hernia; it is predicated upon the strangulation on May 5. The appellant insurance carrier in this court contends that it was the insurance carrier in September, 1934, but was not the insurance carrier in May, 1936,

hence that it is not liable for any accidental injury at the later date. We are unable to find from the record that this question was mentioned either before the compensation commissioner or the trial court. The insurance carrier appeared before the commissioner and before the trial court without any suggestion that it was not liable. It is too late to raise the question here. In fact we know nothing about it except what appellants now tell us in their briefs.

We find no error in the record. The judgment of the court below will be affirmed. It is so ordered.