No. 37,419

C. G. MARQUISS (Claimant), *Appellee,* v. BILWIL MINING COMPANY (Respondent) and NATIONAL MUTUAL CASUALTY COMPANY (Insurance carrier), *Appellants.*

(202 P. 2d 194)

Opinion filed January 22, 1949.

*Barton E. Griffith,* of Topeka, argued the cause, and *Don H. Elleman* and *Perry Porter,* both of Columbus, were with him on the briefs for the appellants.

*C. E. Rumery,* of Baxter Springs, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is a workmen's compensation case. In the proceeding before the compensation commissioner and in the district court the claimant recovered. The respondent and insurance carrier appeal from the district court's award.

So far as the issues on appellate review are concerned little, if any, dispute exists as to the facts. Those about which there is no possible controversy can be summarized as follows: The claimant, a man sixty-five years of age, was a hoisting engineer in the employ of the respondent company at its lead and zinc mine in Cherokee county. Prior to such employment, and while working for himself, he had sustained an injury to his right eye which materially impaired its sight. On April 24, 1946, he sustained another injury to the same eye which arose out of, and in the course of, his employment with the company. The result was he became completely blind in such eye, which was eventually removed and replaced by an artificial one.

Based upon the factual situation just summarized and certain additional testimony respecting the extent of claimant's injury, to which reference will presently be made, the district court made the following findings, among others, and rendered a judgment corresponding therewith:

"The court further finds that prior to receiving said injury to said right eye on the 24th day of April, 1946, the claimant was able to see objects with said eye and was able to use the right eye in ascending and descending stairs and could see anything pass him and that said right eye did not cause claimant any difficulty prior to the said 24th day of April, 1946.

"The court further finds that as a result of the accidental injury which claimant sustained on the 24th day of April, 1946, he lost an eye and is entitled to compensation therefor, and that the case of Justice vs. Flour Mills, 147 Kan. 402, is controlling in this case and that claimant is entitled to compensation for a period of 110 weeks plus a healing period of three weeks, five days, or a total of 113 weeks, 5 days, payable at the rate of $18.00 per week. . . ."

At this point it should be said that such portion of the findings heretofore quoted as are purely factual were supported by substantial competent evidence. In addition, it should be stated in fairness, the respondent's medical testimony was to the effect that prior to the date on which claimant suffered the injury in question the vision of his right eye was only 20/200 plus without glasses and

20/200 with glasses and that one of the findings of the trial court not heretofore mentioned was to the effect claimant's right eye, due to its prior injury, was of little, if any, use to him for most purposes.

Appellants concede that in view of the foregoing facts and circumstances appellee was entitled to some relief under provisions of the workmen's compensation act. However, when analyzed, it appears their claim of error is based solely upon the proposition that under its terms a workman who sustains an injury to an impaired eye, such as the claimant had in the case at bar, resulting in complete loss of sight of such eye and its ultimate removal, is not entitled to compensation for its loss. We therefore turn directly to that question.

The loss of an eye by a workman covered by the act is a scheduled injury and the amount to be allowed as compensation therefor is set forth in G. S. 1945 Supp. (now G. S. 1947 Supp.) 44-510 (3) (c) (15), which reads:

"Where disability, partial in character but permanent in quality, results from the injury, the injured workman shall be entitled to the compensation provided in paragraph 1 of this section, but shall not be entitled to any other or further compensation for or during the first week following the injury. Thereafter compensation shall be paid as provided in the following schedule, . . .

"For the loss of any eye, or the complete loss of the sight thereof, 60 percent of the average weekly wages during one hundred ten weeks."

In addition, subsection (3) (c) (21) of the same section provides:

"Whenever the workman is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in paragraph 1 of this section and no additional compensation shall be allowable or payable for either temporary or permanent disability: *Provided, however,* That the commission, arbitrator or committee may, in proper cases, allow additional compensation during the actual healing period, such period not to be more than ten percent of the total period allowed for the schedule injury in question nor in any event for longer than fifteen weeks: *Provided further,* That the return of the workman to his usual occupation shall terminate the healing period."

From the foregoing quotations, inasmuch as it is not contended appellee's actual healing period was less than three weeks and five days, and conceded his eye was removed, it is obvious the trial court's judgment was proper if the phrase "loss of an eye" as found therein extends to and includes the "loss of an impaired eye." By the same token since paragraph 1, referred to in subsection (c) of

paragraph 3, heretofore quoted, relates only to treatment and care of injured employees and not compensatory allowances for injuries, it becomes apparent the effect of appellants' position is that appellee is entitled to no actual compensation whatsoever for the loss of his eye notwithstanding it was usable to the extent found by the trial court in its finding.

It is our view the instant case is governed by our decision in *Justice v. A. C. Flour Mills Co.*, 147 Kan. 402, 76 P. 2d. 402. There we held:

"The amount of compensation to be paid for the loss of an eye, under G. S. 1935, 44-510 (3) (c) (15), is not to be reduced on the ground claimant previously had sustained an injury to the eye, resulting in partial loss of vision, for which he had been paid compensation." (Syl. ¶ 2.)

And said:

". . . The paragraph under which claimant is entitled to compensation in this proceeding—G. S. 1935, 44-510 (3) (c) (15)—is for the loss of an eye; not for the loss of a perfect eye. The court found claimant lost an eye. This is not controverted. The statute provides what compensation he shall receive for the loss of an eye. That is what the compensation commissioner and the trial court gave him." (p. 404.)

Appellants strenuously disagree with this construction of the Justice case and point out that there the claimant had only an eighty percent loss of vision prior to the injury causing the loss of his eye while here, according to their witnesses, the preëxisting impairment in the sight of the eye was ninety percent. Assuming the court's finding as to the usability of appellee's eye prior to his injury warrants their contention, does that justify us in holding such decision is not decisive of this one? We do not think any such result follows where—as there—it was expressly held that the very section of the statute now under consideration entitled the claimant to compensation "for the loss of an eye; not for the loss of a perfect eye," notwithstanding that, unlike the condition prevailing in the instant case, he had already been compensated under the act for his prior injury and partial impairment.

It is also argued that prior to the involved injury appellee was industrially blind and therefore could not recover. One trouble with this argument is that the statute fails to limit or restrict recovery because of such a situation and expressly provides for compensation where a workman loses an eye. Indeed, except for the medical care and treatment provided for by the terms of G. S. 1945

Supp. 44-510 (1), unless subsection (15) of paragraph 3 of 44-510 is so construed a workman who loses an eye, the sight of which had been theretofore impaired, would receive nothing for its loss. In the face of express language to the contrary we would not be warranted in holding the legislature contemplated or intended that result.

Heretofore, with respect to scheduled injuries, our compensation act has been uniformly construed as being the sole guide to determine the amount of compensation when an injury is once determined (see *McCullough v. Southwestern Bell Telephone Co.*, 155 Kan. 629, 634, 127 P. 2d 467, and cases there cited). We do not propose a change in that salutary rule.

Next it is urged our construction of the statute may ofttimes lead to unjust results. Conceding the point without deciding it, the appellants' remedy is by appeal to the legislature, not to this court. Long ago in *Anderson v. Oil & Refining Co.*, 111 Kan. 314, 316, 206 Pac. 900, we said:

". . . It was competent for the legislature to make classifications of disabilities and prescribe the rules to be applied in measuring the compensation for each class. The legislature prescribed a measure for certain scheduled disabilities, and a different rule for partial disabilities not scheduled. The fact that the application of these rules may seem to some to operate unjustly, requires a close scrutiny of the act to ascertain the legislative intent, but affords no ground for the court to substitute rules different from those enacted by the legislature. If the practical operation of the law is found to bring disproportionate or unjust results, it may be assumed that the legislature will amend it, but this is a function which belongs alone to that body . . ." (p. 316.)

The foregoing statement has been repeatedly quoted and directly applied to more recent enactments of the compensation act. See *Rogers v. Board of Public Utilities*, 158 Kan. 693, 149 P. 2d 632, and *Riggan v. Coleman Co.*, 166 Kan. 234, 200 P. 2d 271 (decided November 30, 1948).

Other contentions advanced by the appellants in support of their position have all been considered but are not regarded as important enough to require express treatment in this opinion or sufficiently persuasive to change our views as herein expressed which, it is to be noted (see 142 A. L. R., Anno. 822), are in accord with the great weight of authority in those jurisdictions where statutes similar to ours have been construed.

The judgment is affirmed.

WEDELL, J. (concurring): This is the kind of case that clearly emphasizes some of the inadequacies, and, in my opinion it may fairly be said, some of the injustices, of the workmen's compensation act. To my knowledge no sound reason has yet been suggested for not amending the pertinent provisions of the act so as to make them more equitable to both the employee and employer.

Notwithstanding the able brief of counsel for appellants, which has been studied with care, I find myself unable to devise any different measure of compensation, based on the provisions of the act, than that stated in the opinion. I, however, concur only for the reason that studious consideration leaves me no alternative.