No. 38,874

JESSE L. HEMPHILL, *Appellee,* v. CO-OPERATIVE REFINERY ASSOCIA-
TION OF COFFEYVILLE, and EMPLOYERS MUTUAL LIABILITY INSUR-
ANCE COMPANY, *Appellants.*

(255 P. 2d 624)

Opinion
filed April 11, 1953.

*Aubrey Neale,* of Coffeyville, argued the cause and was on the briefs for
the appellants.

*Clement H. Hall,* of Coffeyville, argued the cause and was on the briefs for
the appellee.

The opinion of the court was delivered by

PRICE, J.: The question here is whether the loss of a totally sight-
less eye is compensable under the Workmen's Compensation Act.

Claimant, who was thirty-one years of age, had been employed
for several years as a pipefitter's helper, and on an occasion while
so employed was working within a few feet of an electric arc
welding outfit. He was not equipped with a welder's hood and felt
heat from the welding arc. He was awakened that night by a pain
and soreness in his left eye. The next morning he reported the fact
to his employer and was given medical attention. It was determined
medically that he had received a "flash burn" in his eye, and follow-
ing various treatments and medical care by experts the eye was
removed by surgery and replaced with an artificial eye.

It is admitted that claimant's left eye had been totally sightless
for about twenty-five years, he having sustained an injury thereto
by a stick when a child, resulting in a traumatic cataract. Insofar
as the record discloses, his right eye was normal at all times. There

was considerable expert medical testimony to the effect the sightless left eye was structurally all right; that the nerves in it had not been injured in the boyhood accident; that it focused properly and moved normally with the good right eye; that there was nothing in the appearance of the left eye to indicate to a layman that it was sightless, and that it had a potential usefulness to claimant in that in such a case there is always the possibility that sight could be restored by a surgical operation, but that as a practical matter such an operation probably would never be attempted as long as a person so afflicted retains good vision in his other eye.

Both the commissioner and the trial court allowed compensation to claimant for "the loss of an eye," and both tribunals included in their findings the fact of the "potential usefulness" to claimant of this sightless eye, heretofore referred to. The amounts awarded for medical expense and for the loss of the eye itself are not in dispute.

Respondent employer and its insurance carrier first contend there is no substantial, competent evidence to support the claim that the removal of the sightless eye was the result of an accident arising out of and in the course of claimant's employment.

This contention cannot be sustained. It is unnecessary to detail the facts further than already related, and it is sufficient to say that all of the evidence, both direct and circumstantial, and medical as well as lay, leads to the conclusion that claimant received a flash burn to his left eye, that it was an accident arising out of and in the course of his employment, and that as a result thereof the eye was removed.

Next it is argued the finding of the trial court that the blind eye had a potential usefulness to claimant is contrary to all of the evidence, which, it is conceded, disclosed that the eye was totally blind prior to its injury and removal.

The evidence concerning this matter has already been related. It is conceded that claimant had been totally blind in his left eye for about twenty-five years. Expert medical evidence was to the effect that it did possess a potential usefulness in that there was always the possibility of restoration of sight by surgery. The finding of the trial court as to that matter is supported by the evidence.

This brings us, then, to a determination of the real question in this case, namely, does the removal of a totally sightless eyeball entitle a workman to compensation for "the loss of an eye"?

The loss of an eye by a workman covered by the Act is a scheduled injury for which compensation in a definite amount is allowed. Our applicable statute, G. S. 1951 Supp. 44-510 (3) (*c*) (15), reads:

"For the loss of an eye, or the complete loss of the sight thereof, sixty percent (60%) of the average weekly wages during one hundred ten (110) weeks."

The precise question here has never been before this court, although in at least two cases the right to recover for the loss of an impaired eye has been decided.

In *Justice v. A. C. Flour Mills Co.*, 147 Kan. 402, 76 P. 2d 802, the workman had suffered a previous injury to an eye for which he received compensation for an eighty percent loss of vision. Several years later, while employed by a different employer, he sustained another injury to the same eye which resulted in its removal. He sought and was awarded compensation for "the loss of an eye" under the statute then in force, it being identical to our present statute above quoted. Respondents contended that as claimant had formerly lost eighty percent of his vision in the eye in question, for which he had been compensated, they were therefore liable for only twenty percent for the loss of the eye as a result of the later injury. This court held that such contention was not well-taken, and in affirming the award said:

"The paragraph under which claimant is entitled to compensation in this proceeding—G. S. 1935, 44-510 (3) (*c*) (15)—is for the loss of an eye; not for the loss of a perfect eye. The court found claimant lost an eye. This is not controverted. The statute provides what compensation he shall receive for the loss of an eye. That is what the compensation commissioner and the trial court gave him." (p. 404.)

A similar question arose in *Marquiss v. Bilwil Mining Co.*, 166 Kan. 420, 202 P. 2d 194. In that case the claimant, prior to the employment in question, and while working for himself, sustained an injury to his right eye which materially impaired its sight. Some time later, while in the employ of respondent, he sustained another injury to the same eye, which arose out of and in the course of his employment, and as a result the eye, which became completely blind, was removed and replaced with an artificial one. It was contended that a workman who sustained an injury to an impaired eye resulting in complete loss of sight of such eye, and its ultimate removal, was not entitled to compensation for its loss. The trial court allowed compensation for "the loss of an eye" and on appeal the award was affirmed. The decision followed the

holding in the Justice case, *supra,* and it was again held that the provision of the statute (identical to our present one) is to be construed as requiring payment of compensation to an injured workman for the loss of an eye, not for the loss of a perfect eye, and the fact that a prior injury to the same eye had materially impaired its sight does not preclude recovery for its loss.

It will be seen that in each of those cases compensation was allowed on the theory the claimant had "lost an eye" and that prior impairment of its sight was immaterial.

While it appears that here the lower court possibly based its decision in part on the medical evidence showing a "potential usefulness" of claimant's eye, we prefer to base our decision upon the express language of the statute, irrespective of its potential usefulness. The statute provides compensation for:

".  .  . the loss of an eye, *or* the complete loss of the sight thereof, .  .  ." (Our emphasis.)

It does not restrict recovery to the loss of a perfect or an impaired eye, and the use of the word "or" would indicate the legislature had in mind the physical removal of an eye, even though defective or sightless, as well as the complete loss of the sight of an eye. Prior to the injury in question claimant was possessed of his left eye, even though it was sightless. He does not have it now. He has lost an eye!

And neither are we basing our decision upon what the medical testimony showed to be the usual results of wearing an artificial eye, such as local irritation and discomfort, psychological effect, and change in one's physical appearance. These, of course, are factors to be taken into consideration, and undoubtedly such was done in the enactment of the compensatory provision for "the loss of an eye."

We are aware of decisions from other jurisdictions holding contrary to the views herein expressed (see annotation at 142 A. L. R. 822), but we are satisfied with our two former decisions touching upon the subject, *supra,* and have no reluctance in holding that even under the facts of this case, in which the eye was already totally sightless, the workman is nevertheless entitled to compensation for its loss.

The judgment of the lower court is affirmed.