No. 39,044

ED JUSTICE, *Appellee*, v. CONTINENTAL CAN COMPANY, and LIBERTY MUTUAL INSURANCE COMPANY, *Appellants*.

(257 P. 2d 564)

Opinion filed May 21, 1953.

*Paul L. Wilbert,* of Pittsburg, argued the cause, and *A. B. Keller* and *Randall D. Palmer,* both of Pittsburg, were with him on the briefs for the appellants.

*Kirke C. Veeder,* of Independence, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal by the employer, Continental Can Company, a corporation, and its insurance carrier, Liberty Mutual Insurance Company, in a workmen's compensation case.

The case involves the loss of claimant's left eye and a previous partial loss of vision in his right eye, both injuries having occurred in the course of claimant's work for the same employer. Separate claims were filed for each injury. They were set for hearing before the commissioner on the same day. The claim involving the right eye was heard first. A separate award was made thereon for permanent *partial disability.* In the hearing involving the left eye the record pertaining to the right eye was also considered. This was done for the purpose of determining not only the extent of injury to the left eye but also the loss of the co-ordinate function of both eyes. It was stipulated these were among the issues to be tried in the left eye case.

In the left eye case the commissioner computed the compensation on the theory the workman had suffered permanent total disability.

He ordered payments of compensation to begin after the expiration of the period for which compensation had been awarded in the previous case involving injury to the right eye.

Continental Casualty Company was the employer's insurance carrier at the time of the previous injury to the *right* eye. Liberty Mutual Insurance Company was the insurance carrier at the time of injury to the *left* eye. Separate appeals to the district court were perfected from each award by the respondent employer and the respective insurance carriers. The award involving the right eye was later paid and the appeal to the district court was dismissed on motion of the respondent employer and its insurance carrier.

The district court made no detailed findings but found generally for the claimant and adopted the findings and award of the commissioner. With this general background we return to the record made by the commissioner. He made a brief summary of the evidence in the left eye case, which evidence, where necessary, will be supplemented under treatment of some of appellants' contentions. That summary reads:

"Prior to being employed by this respondent, this claimant was given a physical examination on May 28, 1949, by Dr. W. T. Read of Coffeyville. Tests relating to claimant's eyes were made by the nurse in Dr. Read's office. The records of his office, as a result of the nurse's computation, reveal the claimant, at the time of his examination, to have a visual acuity of the right eye of 20/40, left eye 20/200. Claimant testified his job with the respondent was cleaning up the plant area. This involved picking up scrap lumber, dirt, metal and other debris and taking it to the dump. Some of the scrap material was loaded by hand. Dirt and other material was loaded with a hand shovel. Claimant testified that on January 25, 1952, about 2:30 or 3 o'clock in the afternoon of that day, he and a fellow workman were engaged in scooping crushed rock into a wagon with shovels. As his fellow workman threw a scoop full of this dust and crushed rock into the wagon a gust of wind blew dust particles in the direction of this claimant and some of those particles of dust entered his left eye. Claimant stated he reported the accident and injury to the nurse at the company dispensary and was directed by the nurse in charge there to Dr. Unruh for professional care.

"Dr. W. G. Gillett, physician and ophthalmologist of Wichita, Kansas, witness for claimant, testified he saw the claimant for the condition of the left eye initially on February 12, 1952, and continued to observe the condition daily until February 28, 1952, when he was obliged to remove the eye. The doctor was of the opinion the rock dust the claimant received in his eye on January 25, 1952, was directly responsible for the inflammatory condition and removal of claimant's left eye. Claimant had received a prior injury to the right eye on August 28, 1951, and, as a direct result of that accident, suffered a visual acuity loss of the right eye of 64.25 per cent. Dr. Gillett stated that by reason of the prior loss of vision of the right eye and the total loss of the left eye by its re-

moval, the claimant now suffers an impairment of the visual efficiency of the co-ordinate function of both eyes of 73.19 per cent.

"Dr. John W. Unruh, witness for respondent, testified by deposition that he saw the claimant January 26, 1952, and at that time the claimant was suffering from conjunctivitis of the left eye. He continued to treat the claimant for this condition to and until February 11 and the condition became progressively worse during that time. The doctor stated he felt this condition of the eye was due to infection and not trauma."

## The commissioner's findings and award were:

"The Examiner finds that the claimant reported the accident of January 25, 1952, to the nurse at the company dispensary and to the company doctor on January 26, 1952, and therefore this respondent had due notice as provided by our statute; that the application for hearing herein was filed within 120 days of the date of the accidental injury and therefore written claim for compensation has been duly made.

"The Examiner further finds the claimant suffered an accidental injury on January 25, 1952, when particles of rock dust came in contact with his eye on that date and that said accidental injury was the direct cause of the loss of his left eye by enucleation and that said accidental injury arose out of and in the course of his employment; that by reason of the impairment of the visual efficiency of the coordinate function of both eyes, the claimant has a permanent partial disability of 73.19 per cent and, by reason of his wage being $62.40, he is entitled to compensation at the rate of $25 per week.

"The yardstick for computing the amount of compensation in this claim is set out in the case of *Polston v. Ready Made Homes,* 171 Kan. 336, since claimant herein has suffered the removal of his left eye as a result of the accident on which this claim is based and previously had suffered a 64.25 per cent loss of visual acuity of the right eye in an accident of August 28, 1951. That decision very pointedly stated that the 1951 Supplement to the General Statutes of 1949, 44-510 (3) (24) applies. Claimant is, therefore, entitled to compensation for a period of 415 weeks, 'less the amount provided in the schedule of this section for his prior injury,' of 70.68 weeks. This computation, therefore, entitles the claimant to an award of 344.32 weeks, that amount to be paid on a weekly basis commencing February 15, 1953, being the day following the date on which compensation being paid for the prior injury of August 28, 1951, ceases.

"The Examiner further finds the respondent and insurance carrier should pay the bill for professional service given this claimant by Dr. Gillett in the sum of $150 and should also pay the bill of St. Francis Hospital, Wichita, Kansas, in the sum of $64.95, in addition to the bill of Dr. Unruh which has previously been paid.

### "AWARD

"WHEREFORE, AWARD OF COMPENSATION is hereby made in favor of the claimant, Ed Justice, and against the respondent, Continental Can Company, and insurance carrier, Continental Casualty Company, [error] for a total period of 344.32 weeks, payable at the rate of $25 per week commencing February 15, 1953, the day following the date of the final payment of compensation for the prior injury of August 28, 1951, subject to review and modification as provided by law.

"Further award is made that respondent and insurance carrier pay Dr. W. G. Gillett the sum of $150, and St. Francis Hospital, Wichita, Kansas, the sum of $64.95 for professional care given this claimant."

It has been observed the above award of the commissioner contains the name of the insurance carrier as Continental Casualty Company when it was intended to be Liberty Mutual Insurance Company, the insurance carrier at the time of injury to the left eye. The commissioner, pursuant to a hearing, corrected the error by amendment of the award the day following its rendition.

The record of the hearing on appeal in the district court discloses the following:

"The parties then, in open court stipulate and agree that the court, in determining said appeal, may consider the entire record and the transcript thereof in two separate compensation matters, to-wit: Docket No. 22607 concerning claimant's left eye, from which the instant appeal proceeds, and Docket No. 22608 concerning claimant's right eye, from the award in which case no appeal now exists.

"Thereupon respondent and its insurance carrier move the court for an order reinstating the appeal in the said proceeding Docket No. 22608, concerning claimant's right eye. The court, after hearing argument on said application, overrules the same."

For the purpose of clarity it may be well to emphasize that the insurance carrier which joined with the respondent employer in the above motion to reinstate the appeal in the right eye case was not the Continental Casualty Company, the insurance carrier in the right eye case, but was Liberty Mutual Insurance Company, the insurance carrier at the time of injury to the left eye, which is one of the instant appellants.

Appellants argue there is no substantial evidence notice of the accident was received by the employer, as required by G. S. 1949, 44-520, and they were, therefore, prejudiced in that they were unable to protect themselves by taking claimant off work and prescribing the proper treatment for the left eye in order to make its removal unnecessary. There is sharp conflict in the evidence on the subject of notice to the company's head nurse, which was a common and accepted practice with this employer, within ten days as required by statute. The head nurse testified appellee had not notified her of the accident. Appellee testified he had. The accident occurred January 25, 1952, and Doctor John Unruh, one of the employer's doctors, started treating the left eye the next day. The Doctor stated appellee had not told him he had gotten rock dust in his left eye. Appellee stated he had told him. The doctor testified

appellee was his private patient but the head nurse testified if the report had been made to her, she would have sent appellee to Doctor Unruh. Marvin Rogan, the employer's employment supervisor, stated that if an employee reported an eye injury he was referred to Doctor Unruh for care and attention. The district court resolved the conflicting evidence in favor of appellee and its finding is conclusive on appeal. Since we are obliged to conclude there was notice we need not discuss the subject of alleged prejudice for lack of notice.

Appellants assert there is no substantial proof appellee suffered permanent total disability by reason of the accidents to both eyes. They contend Doctor Gillette, appellee's witness, who removed the left eye, advised appellee he was able to perform the same work he was doing prior to the removal of the left eye. The statement is too broad. What the doctor, in effect, said was that the vision in the right eye was very poor; he could not do anything that required close work; he could carry lumber or things like that and he, therefore, permitted him to return to his work.

Appellants also stress the fact appellee said he thought he could do the work he had been doing. The record shows he tried to do the work for two days but was discharged; his employer told him he could not let him continue because the insurance company would not permit it.

G. S. 1949, 44-510 (3), in part, provides:

"Loss of both eyes, both hands, both arms, both feet or both legs shall, in the absence of proof to the contrary, constitute a total permanent disability . . . *In all other cases total permanent disability shall be determined in accordance with the facts.*" (Our italics.) (Now G. S. 1951 Supp. 44-510 [3] [a].)

Appellee had not lost both eyes. Upon the facts the district court adopted the award of the commissioner for permanent total disability. Appellants insist the district court approved the finding of the commissioner that appellee was permanently partially disabled by reason of impairment of the co-ordinate function of both eyes to the extent of 73.19 percent. That was the evidence with respect to visual tests as to co-ordinate functioning of both eyes but that testimony did not preclude the district court from also considering additional testimony pertaining to appellee's vision for practical purposes relative to the work in which he was engaged. Having been discharged because respondent insurance carrier believed appellee's vision was too greatly incapacitated for practical purposes for it to assume the risk of his employment it is difficult to

understand how appellants can complain of the award for permanent total disability. This court, of course, is concerned only with evidence which supports or tends to support the findings made. In a highly similar factual case with respect to loss of vision in both eyes we refused to upset an award of the district court as to permanent total disability. (*Polston v. Ready Made Homes,* 171 Kan. 336, 232 P. 2d 446.) In the instant case the district court did more than merely approve the findings of the commissioner. It made an independent finding in which it expressly found generally in favor of appellee. That, of course, included the award which is based on the theory the extent of the injuries resulted in permanent total disability. The evidence amply sustains the finding of the district court.

Appellants further insist there is no substantial evidence of injury to the left eye on January 25, 1952, for the reason that according to the Snellen test the standard for industrial blindness is 20/200. They, therefore, argue the left eye before its removal was nothing. They direct attention to the testimony of Doctor Gillette, appellee's witness, who upon the basis of that test, stated appellee's left eye was industrially blind before he was employed. The standard for industrial blindness, concerning which Doctor Gillette testified, is established for the benefit of the workman in order to enable him to obtain compensation for the loss of use of an eye when injury thereto results in reducing visual acuity of an eye to 20/200. It, however, does not follow a workman thereafter retains no vision whatsoever in that eye which may be of some use especially when co-ordinated with the vision in the other eye. That appellee retained some useful vision in the left eye before January 25, 1952, is clearly shown by appellants' own evidence. Appellants' witness, Doctor Unruh, was commendably frank about that fact. This is reflected in his testimony, as follows:

"Q. Do you think he was industrially blind in his left eye when you saw him January 26, 1952? A. Yes, sir.

"Q. Then I take it, in that situation it was your opinion it would not have made much difference what you did to his left eye, you could not have made it any worse than it was since he was blind in it anyway? A. No, sir; I would not take that attitude, because it could be lots worse than 2200 [meaning 20/200]."

That appellee retained some vision in his left eye at the time of the injury on January 25, 1952, but before its enucleation, is further disclosed by Doctor Unruh's testimony, as follows:

"I explained to Mr. Justice [appellee] that the treatment I recommended *might impair the vision of the eye.  .  .  ."* (Our italics.)

In view of such testimony it cannot be said the left eye was nothing or entirely useless. Moreover the act provides for compensation to an injured workman for the loss of an eye, not for the loss of a perfect eye. (*Justice v. A. C. Flour Mills Co.,* 147 Kan. 402, 76 P. 2d 802; *Marquiss v. Bilwil Mining Co.,* 166 Kan. 420, 202 P. 2d 194; *Hemphill v. Co-operative Refinery Assn.,* 174 Kan. 301, 255 P. 2d 624.) There was positive testimony by Doctor Gillette the rock dust which appellee got into his left eye on that day not only could have been, but probably was, the cause for the aggravated condition of the eye which made its removal necessary. Under the circumstances narrated we would not be justified in saying there was no substantial evidence of injury to the left eye on January 25, 1952, although on that date appellee was industrially blind. Accidental injuries are compensable where the accident only serves to aggravate or accelerate an existing disease, or intensifies the affliction. (*Kauffman v. Co-operative Refinery Assn.,* 170 Kan. 325, 225 P. 2d 129.)

Appellants urge the district court erred in refusing to reinstate the appeal to the district court from the award made by the commissioner in the right eye case. The award in the right eye case had been paid and the appeal from that award had been dismissed. Concerning its correctness we express no views. Right or wrong the award in the right eye case had become a finality. (*Dobson v. Apex Coal Co.,* 150 Kan. 80, 91 P. 2d 5.) Moreover, instant appellants in the left eye case had no right to have an appeal in the right eye case reinstated after that award had been paid and the appeal therefrom had been dismissed by the respondent employer and its other insurance carrier in that case. The trial court properly denied the motion to reinstate the appeal in the right eye case.

Appellants earnestly contend if this court concludes appellee suffered permanent total disability as a result of his previous disability, namely, industrial blindness, together with the disabilities he sustained from injuries in the employment, then they are entitled to relief under the second injury fund law enacted for cases of this character (laws 1945, chapter 221) which was slightly amended by chapter 290, laws 1947, and now appears as G. S. 1949, 44-566 to 44-572.

Section 1 of that act discloses it applies to members of the body. It, in part, reads:

"(3) 'Member of the body' means an eye, arm, hand, leg or foot." (G. S. 1949, 44-566.)

Section 2 of the act reads:

"When a workman has suffered a disability resulting from an injury to a specific member of the body while in the employ of a trade or business operating within the provisions of the workmen's compensation law, *and having suffered a previous permanent disability as a result of the loss of, or loss of use of, a specific member of the body* while a member of the armed forces of the United States, or while engaged in industry, *or otherwise, and the effects of both disabilities shall result in total permanent disability,* then the total compensation due the workman shall be the amount for total permanent disability computed as provided in section 44-511 of the General Statutes Supplement of 1945 less the amount provided in the schedule set forth in section 44-510 of the General Statutes Supplement of 1945 or amendments thereto for his prior disability: *Provided,* That in no case shall the payments be less than seven dollars per week nor more than twenty dollars per week: *Provided, however, That the employer by whom the workman was employed when the workman received his second disability shall be liable only for the amount of compensation due as provided in the schedule set forth in section 44-510 or amendments thereto of the General Statutes Supplement of 1945 and computed as though the workman had suffered no previous disability: And provided further,* That the remainder of the compensation due the workman under a total permanent disability award shall be paid from the second injury fund as hereinafter provided, but in no event shall the workman be entitled to receive as a result of a second injury more than the commissioner shall allow for total permanent disability less the amount provided for in the schedule set forth in said section 44-510 or amendments thereto for the first disability." (G. S. 1949, 44-567.) (Our italics.)

It is appellants' contention the act is clearly applicable to this case and their liability under its provisions should be limited to compensation for the loss of the left eye, that is, for 110 weeks. G. S. 1949, 44-510 (3) (15), referred to in section 2 of the above second injury fund act reads:

"(15) For the loss of an eye, or the complete loss of the sight thereof, 60 percent of the average weekly wages during one hundred ten weeks."

Appellants, in substance, assert it was the legislative intent and purpose that the second injury fund was expressly created to bear a share of the employer's burden of compensation to a workman who previously had suffered a permanent disability, resulting in the loss or use of a specific member of the body, irrespective of whether such previous disability arose out of the employment or *otherwise* and later suffered a disability from an injury to a specific member of the body while operating within the provisions of the workmen's compensation law, if the effect of all the disabilities resulted in total

permanent disability of the workman. They rely on our statement in *Polston v. Ready Made Homes*, 171 Kan. 336, 232 P. 2d 446, where it was said:

"The later statute applies 'When a workman has suffered a disability resulting from an injury to a *specific member of the body* . . . and having suffered a previous permanent disability *as a result of the loss of*, or loss of use of, a specific member of the body . . . and the effects of both disabilities shall result in total permanent disability. . . .'" (p. 342.)

The statement from the Polston case continues thus:

"It will be observed this statute deals with a loss or loss of use of the specific member of the body named in the statute. It does not deal specifically with a partial loss or loss of use of the named member of the body. In the case before us the compensation commissioner, and the district court on appeal, did not find that claimant had *lost* the right eye or had *lost* the use of it prior to September 28, 1949, but found only that claimant had sustained a partial loss of the use of the right eye, and for that reason they concluded the second injury fund was not applicable. We are unable to say that this conclusion was erroneous." (p. 342, 343.)

Appellants point out in the case at bar, unlike the Polston case, appellee had suffered a previous permanent disability of industrial blindness, equivalent for compensation purposes to the loss of the use of his left eye, before he started working for the instant employer. They, therefore, assert if this court concludes the effect of all the disabilities was total permanent disability the second injury fund law applies.

Is the second injury fund law applicable to the claim involving the left eye? Before considering the merits of that question we believe it may avoid much confusion to clarify at least two specific points. The first is that the decision in the Polston case is not controlling here. The second is this court, in view of the instant record, cannot deprive appellee of the benefits of the separate award made and paid in his right eye case. We shall briefly treat those points in that order.

The similarity of this and the Polston case referred to earlier in this opinion is limited to the fact that in both cases the claimant was totally permanently disabled with almost identical disabilities in each eye. In most, if not in all other respects the cases are highly dissimilar. The previously quoted statements from the Polston case are sound as an interpretation of portions of the second injury fund law. They disclose why the Polston case did not fall within the purview of the second injury fund law. They were pertinent statements as the facts there disclosed the only disability which existed,

prior to employment, was in the right eye and such disability was only partial. Later and in the course of employment Polston lost his left eye. Thereafter he filed *not a claim for a scheduled injury to his left eye, but to recover total permanent disability under the provisions of G. S. 1949, 44-510 (3) (24).* Such an award was made under that statute and this court affirmed it. Those are neither the facts nor the procedure adopted in the instant case. Here two separate and distinct claims were filed embracing scheduled injuries to each eye sustained by accident in the course of employment.

As previously stated, in the present case the claim for permanent partial injury to the right eye was heard, an award was made accordingly and paid. The appeal from that award to the district court was then dismissed. That separate award as made in nowise involved appellee's previous disability of industrial blindness in his left eye. The award was based solely on permanent partial disability to his right eye as a scheduled injury. It became a finality. Appellee cannot be deprived of any part of that award. That would be true even if he had later sustained an injury to that eye which required its removal and which would have justified another award for its complete loss. (*Justice v. A. C. Flour Mills Co.,* 147 Kan. 402, 76 P. 2d 802.) The award in the right eye case has no place now in this separate claim for the scheduled injury to the left eye. Whether the facts bring the left eye claim within the purview of the second injury fund law remains to be determined.

We, therefore, return to the question whether the second injury fund is applicable in the left eye case, the only case now before us. We start with the established fact appellee, after the removal of his left eye, suffered total permanent disability.

We have two statutes which fix the amount of recovery in cases involving total permanent disability. Both must be considered. One of them is G. S. 1951 Supp. 44-510 (3) (24). It reads:

"If a workman has suffered a previous disability and received a later injury, the effects of which together with the previous disability shall result in total permanent disability, then and in that event the compensation due said workman shall be the difference between the amount provided in the schedule of this section for his prior injury and the total sum which would be due said employee for such total disability computed as provided in section 44-511 of the General Statutes of 1949 and any amendments thereto, but in no case less than seven dollars ($7) per week nor more than twenty-five dollars ($25) per week."

The above statute was applied in the Polston case, *supra,* where the disability in the workman's right eye previous to employment

was only partial. That statute existed prior to the enactment of the second injury fund law and was not repealed. It will be observed it is general in character and does not specifically refer to previous disability of a specific member or members of the body. On the other hand the second injury fund law, heretofore quoted, particularizes in that it pertains only to cases involving a "member of the body" and that term is defined to mean "an eye, arm, hand, leg or foot." Since the second injury fund law expressly pertains to previous disability involving only specific members of the body it would appear that law, rather than the general law, was intended to apply, if the facts otherwise bring a case within its purview.

Here, unlike the Polston case, there existed previous to the time appellee started to work for the instant employer a permanent disability in the *left* eye, industrial blindness. The injury of January 25, 1952, was the first injury to his left eye sustained in the course of employment. That injury, which caused the complete removal of the left eye, together with appellee's permanent partial disability in his right eye resulted in his total permanent disability. We, therefore, believe the second injury fund law is applicable. Whether that law might have been invoked with merit in the right eye case is wholly beside the point now and we shall not pursue the question.

We now approach the next logical question of law, the interpretation and application of G. S. 1949, 44-567, in order to determine (1) the amount of the total award; (2) the amount of the award against the employer; and (3) the award against the second injury fund. Appellee states he is unconcerned about the source of his proper compensation so long as he receives it. Although the workmen's compensation commissioner and the attorney general of the state have acknowledged service of notice of appeal to this court and although the commissioner under G. S. 1949, 44-569 is responsible for the administration of the second injury fund act, no one has appeared in this court to represent that fund. Appellants contend under that law they are liable only for the loss of the left eye and the second injury fund is liable for the balance of the total award.

Unfortunately appellants' contentions are premature in this court. The commissioner and the district court decided the claim to the left eye, which was a separate scheduled injury, on the theory of total permanent disability and compensated appellee in accordance with the provisions of G. S. 1951 Supp. 44-510 (3) (24). Clearly the district court has not passed on the above questions involved in the second injury fund law now held to be applicable.

This court has no original jurisdiction in compensation cases. Its jurisdiction is limited to a review of questions of law decided by the district court. (G. S. 1949, 44-556.) The workmen's compensation act prescribes a complete and exclusive procedure of its own and provisions of the civil code relating to powers of this court on appeal or to any other civil matters may not be borrowed and applied to supplement provisions of the compensation act. (*Norman v. Consolidated Cement Co.,* 127 Kan. 643, 649, 274 Pac. 233; *Employers' Liability Assurance Corp. v. Matlock,* 151 Kan. 293, 298, 98 P. 2d 456; *Wise v. Phoenix Indemnity Co.,* 173 Kan. 372, 376-377, 246 P. 2d 308; *Burns v. Topeka Fence Erectors,* 174 Kan. 136, 254 P. 2d 285.)

It follows that until the district court determines the questions of law involved in making the awards under the second injury fund law its rulings on those legal questions are not before us for review. It, therefore, becomes necessary to remand the cause to the district court to complete its record by determining the amount of the respective awards under the second injury fund law.

When those awards have been finally determined it will be the duty of the commissioner to comply with the directions of G. S. 1949, 44-569 pertaining to the administration of the second injury fund.

A few other contentions require attention.

Appellants argue there was no substantial evidence to support the finding assessing costs of professional services of Doctor Gillette and of the St. Francis Hospital against them. It is not contended the doctor or the hospital were incompetent or that the charges set forth in the award were unreasonable. In fact they appear to be most reasonable. Although the authority to render such services in the left eye case might have been more specific there is evidence to support the view entertained by Doctor Gillette that appellee was a compensation case for treatment of the left eye as well as the right eye. He had been expressly authorized in writing by counsel for the employer's first insurance carrier to treat the right eye. His services to that eye continued until and after appellee sustained the injury to his left eye. See the somewhat analogous case (*Kauffman v. Co-operative Refinery Assn.,* 170 Kan. 325, 225 P. 2d 129) in which a doctor operated for a hernia on both sides when he had been expressly authorized to operate on only one side.

In the instant case the employer's doctor had recommended certain treatment of the left eye after its injury on January 25, 1952,

but advised appellee it might impair its vision which, as previously shown, was rated as industrially blind before that injury. Appellee was unwilling to take the chances of such treatment and told the doctor he wanted to see Doctor Gillette of Wichita, who was then treating his right eye. The employer's doctor thereupon discharged him and asked him not to return. Neither the employer nor its doctor advised Doctor Gillette appellee would not continue to be a compensation case. Prior to receipt of the letter by Doctor Gillette from counsel for the employer's first insurance carrier authorizing him to treat the right eye as a compensation case Doctor Gillette had assumed appellee was his private patient. Thereafter he assumed appellee was a compensation case and also treated appellee's left eye. Doctor Gillette testified that after receiving written authorization from the employer's attorney to treat claimant as a compensation case he treated him "all the way through this thing." When he was asked whether he had submitted a statement to the insurance company for his services he replied, "No, I have not, because I have never got through treating him." Under the circumstances we would hesitate to say Doctor Gillette did not have reasonable justification for believing he was treating both eyes for the employer as a compensation case.

Appellants ask this court to determine the liability of each of the insurance carriers with respect to the claims for injuries to the respective eyes. The concern of this court under the compensation act pertains primarily to the liability of the employer to the workman and not to the settlement of independent controversies which may arise between the various insurance carriers. Moreover the insurance carrier in the right eye case, Continental Casualty Company, was not a party to the hearing before the commissioner or in the district court in the instant left eye case. It is not a party to the instant appeal. Obviously this court has no jurisdiction to determine its rights or liability. Touching this subject see *Evans v. Western Terra Cotta Co.*, 145 Kan. 924, 928, 67 P. 2d 426; *Standard Surety & Cas. Co. v. Standard Acc. Ins. Co.*, 104 F. 2d 492. Whatever jurisdiction this court may have over insurance carriers in compensation cases under some circumstances it does not extend to the settlement of their instant controversy on appeal in this case.

It is conceded in this court the applicability of the second injury fund law was presented to the district court and was fully argued. The court should have applied it. The cause is, therefore, re-

manded to the district court with directions that it make awards in harmony therewith and the views herein expressed. In all other respects the judgment is affirmed.

HARVEY, C. J., concurring in part and dissenting in part:

I concur in subdivisions (a), (b), (c) and (d) of paragraph 1 of the syllabus, in subdivisions (a), (b) and (c) in paragraph 2 of the syllabus, and in paragraphs 3 and 4 of the syllabus and corresponding portions of the opinion; and dissent from subdivision (d) of paragraph 2 of the syllabus and from paragraph 5 of the syllabus and corresponding portions of the opinion.

The record in this case does not show that the question of whether the disability of the workman's left eye at the time of his employment by respondent and prior to August 28, 1951, should be taken into account in determining the application of the second injury fund to the injury he sustained to his left eye in January, 1952. To demonstrate the accuracy of this statement it is necessary to set out pertinent portions of the record. The workman sustained two injuries, one to his right eye on August 28, 1951, and another injury to his left eye on January 25, 1952. He made separate claims for compensation for these injuries. They were heard by the examiner of the workmen's compensation commissioner on the same date, June 12, 1952. A separate record was made for each claim. An award was made the workman in each case. Both cases were appealed to the district court. The record pertaining to claimant's injury to his left eye was known as Docket No. 22,607 and the record pertaining to claimant's injury to his right eye was known as Docket No. 22,608. By the time the cases were to be heard in the district court the award made in Docket No. 22,608 had been paid and the appeal had been dismissed. This left for hearing in the district court only the record shown by Docket No. 22,607. In the hearing before the examiner in Docket No. 22,608 the parties stipulated as follows:

"By stipulation of the parties it was agreed the relationship of employer and workman existed on or about August 28, 1951, at the time of the alleged accidental injury; that the parties were governed by the Workmen's Compensation Act; that claimant's average weekly wage was $62.40; that respondent and insurance carrier have paid Dr. John W. Unruh $67.76, and Ruby's Prescription Drug Store, Wichita, Kansas, $5.61, and have paid compensation in the total sum of $75 to this claimant; that the issues herein are (1) whether or not respondent had actual knowledge or notice within the ten day period

immediately subsequent to the alleged accidental injury; (2) or whether or not written claim for compensation has been made; (3) whether or not claimant suffered an accidental injury on or about August 28, 1951; (4) whether the same arose out of and in the course of his employment; (5) extent of loss of vision of claimant's right eye; (6) amount of compensation due, if any."

After hearing the evidence and making preliminary findings, which are not questioned, the commissioner found that the workman had suffered an accidental injury on August 28, 1951, when a foreign particle entered his right eye; that the accident arose out of and in the course of his employment, and that as a result the workman suffered a 64.25 percent permanent partial loss of vision in the right eye and was entitled to compensation for a total period of 70.68 weeks, payable at the rate of $25 per week, and made an award accordingly, the correctness of which is not now in controversy.

Upon the hearing before the examiner for the workmen's compensation commissioner of the workman's claim for injuries to his left eye the parties entered into the following stipulation:

"By stipulation of the parties it was agreed the relationship of employer and workman existed on or about January 25, 1952, at the time of the alleged accidental injury; that the parties were governed by the Workmen's Compensation Act; that claimant's average weekly wage was $62.40; that the issues herein are (1) whether or not respondent had actual knowledge or notice of the alleged accident within the ten-day period immediately subsequent to said alleged accidental injury; (2) whether or not written claim for compensation has been made; (3) whether or not claimant suffered an accidental injury on or about January 25, 1952; (4) whether the same arose out of and in the course of his employment; (5) extent of loss of vision of claimant's left eye and the coordinate function of both eyes; (6) amount of compensation due if any."

The examiner for the compensation commissioner heard the evidence and found that the workman

". . . suffered an accidental injury on January 25, 1952, when particles of rock dust came in contact with his eye on that date and that said accidental injury was the direct cause of the loss of his left eye by enucleation and that said accidental injury arose out of and in the course of his employment; that by reason of the impairment of the visual efficiency of the coordinate function of both eyes, the claimant has a permanent partial disability of 73.19 per cent and, by reason of his wage being $62.40, he is entitled to compensation at the rate of $25 per week.

"The yardstick for computing the amount of compensation in this claim is set out in the case of *Polston v. Ready Made Homes*, 171 Kan. 336, since claimant herein has suffered the removal of his left eye as a result of the accident on which this claim is based and previously had suffered a 64.25 per cent loss of visual acuity of the right eye in an accident of August 28, 1951. That decision

very pointedly stated that the 1951 Supplement to the General Statutes of 1949, 44-510 (3) (24) applies. Claimant is, therefore, entitled to compensation for a period of 415 weeks, 'less the amount provided in the schedule of this section for his prior injury,' of 70.68 weeks. This computation, therefore, entitles the claimant to an award of 344.32 weeks, that amount to be paid on a weekly basis commencing February 15, 1953, being the day following the date on which compensation being paid for the prior injury of August 28, 1951, ceases."

An award was made accordingly.

The attorney who represented the respondent in the two cases before the examiner for the workmen's compensation commissioner and who filed the notice of appeal in each case did not appear for respondent in the district court. The present attorneys represented respondent in that court. When the matter came on for hearing in the district court October 30, 1952, the parties in open court stipulated that in determining the appeal the court might consider the entire record and transcript in the two separate compensation cases. Counsel for respondent moved the court for an order reinstating the appeal in Docket No. 22,608, concerning claimant's right eye. After hearing the argument thereon the court overruled that motion. The hearing proceeded upon the appeal from the award of the compensation commissioner. After hearing the argument of counsel the court took the matter under advisement until November 17, 1952, at which time the court made an order in which the court:

". . . finds generally in favor of Ed Justice, claimant and plaintiff, and against the Continental Can Company, a corporation, respondent and defendant, and against its insurance carrier, Liberty Mutual Insurance Company.

"The court further adopts as the findings of the court, as to both fact and law, the findings of fact and the award and conclusions of the Workmen's Compensation Commissioner of Kansas, made and entered August 5, 1952, on file herein, and from which said appeal was taken, and finds that each and all of the same should be approved and confirmed and a judgment entered herein accordingly in favor of claimant and plaintiff and against the said respondent and defendant and its insurance carrier."

Judgment was rendered in harmony with these findings.

There is nothing in this record which shows that the disability of the workman's left eye prior to August 28, 1951, was a question that was to be taken into account in determining the application of the second injury fund to the injury he sustained in his left eye in January, 1952. Neither do I find anything in the briefs of counsel which indicates that they conceded such a question was before the trial court. The question is not properly before us. For this court

to hold that the workman's disability in his left eye prior to the injury to his right eye on August 28, 1951, should be taken into account in determining liability under the second injury fund, is not justified by the record and is unsound from a legal viewpoint. To me it is clear that the examiner for the workmen's compensation commissioner made his finding and award upon the theory that the partial injury to the right eye on August 28, 1951, was the first injury and that the injury to the left eye on January 25, 1952, was the second injury and made the award in harmony with the case of *Polston v. Ready Made Homes,* 171 Kan. 336, 232 P. 2d 446, and also discloses that the trial court treated the case in the same manner.

Since the district court must hear the case upon the record shown ·by the transcript of evidence and proceedings as presented, had and introduced before the commissioner (G. S. 1949, 44-556) I am wondering what the district court can do if the opinion as written for the court goes down. Apparently the opinion contemplates some procedure not provided by statute. The judgment of the trial court should be affirmed.