No. 33,598

Don Johnson, *Appellee*, v. Arma Elevator Company and Hardware Mutual Casualty Company, *Appellants*.

(73 P. 2d 1018)

Opinion filed December 11, 1937.

*G. Clay Baker*, of Topeka, for the appellants.

*Sylvan Bruner,* of Pittsburg, and *Louis N. Wolf,* of Joplin, Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from an award of compensation to Don Johnson, who sustained injuries when a truck belonging to the Arma Elevator Company of Pittsburg turned over on a public highway in McPherson county.

The principal contention in this appeal is that the evidence adduced before the compensation commissioner, and on which the trial court based its judgment, was insufficient to show that Johnson was an employee of the Arma Elevator Company at the time of the accident.

Briefly stated, the pertinent facts were these: The Arma Elevator Company was a corporation engaged in a wholesale grocery and feed business. It had headquarters at Arma and Pittsburg in Crawford county. It had a fleet of ten or twelve trucks which it used in its regular corporate business, under license as a private carrier.

J. C. Teter operated a trucking business as a licensed contract carrier under the name and style of The J. C. Teter Transfer Company. His headquarters were near Pittsburg in Crawford county. He owned five trucks.

For several years prior to 1935, Teter did considerable hauling for the Arma company. In 1935 the manager of that company, John Masquelier, and Teter agreed upon an experimental arrangement which they hoped would turn out to be to their mutual advantage, which was to this effect: The Arma company would purchase a truck, take out a license on it as a private carrier, and obtain the insurance for its operation and to protect the employees who operated it—all as required by state regulations. Teter agreed to oversee its operation and to select dependable men as its drivers. The earnings of the truck were to be disbursed as follows: payment for oil, gas and repairs; payment of twenty-five percent of the truck's gross earnings to the truck driver; payment of required installments on the purchase price of the truck; balance, if any, to Teter for his services—which would eventually, or, at least, probably, increase when the installment payments of the purchase price were completed. This arrangement was set on foot. Shortly thereafter a second truck was purchased and put to work under the same arrangement. Teter selected Don Johnson, who had theretofore been occasionally employed by him, to be driver of one of the new trucks. Teter in-

formed Masquelier of his selection and told Don Johnson that when he took charge of the new truck he would be working for the Arma company. The Arma company's name was on the truck; the license and the insurance were held by the Arma company. The Arma company issued the bills of lading for the goods to be transported by the truck driven by Johnson. Usually these were delivered to Teter and by him to Johnson, but frequently Johnson went to the Arma company's headquarters to get the bills. During the autumn of 1936 Johnson drove this truck to and from Kansas City for loads of groceries and to and from Claflin, in Barton county, for loads of flour and feed. These were usually delivered at warehouses of the Arma company in Arma and Pittsburg, but sometimes to customers of the Arma company en route.

On August 8, 1936, Johnson and another driver were traveling eastward from Claflin with a load of 200 sacks of feed and five tons of flour, when at a point on the highway near the city of McPherson the truck turned over and Johnson sustained various injuries, one of which necessitated the amputation of his left leg below the knee.

The trial court approved an award of compensation to Johnson.

In this appeal the respondent presses two points on our attention—the insufficiency of the evidence as to Johnson's employment by the Arma company, and also as a basis for calculating the amount of compensation which was awarded.

Touching the first point, it seems to us that our above summary of the facts which we have gleaned from the record disposes of that contention. Were more evidence required, the testimony of the doctor who amputated Johnson's shattered leg would appear to remove such contention from the field of fair debate. The doctor testified that when Johnson was brought to a hospital in Pittsburg, the Arma company's insurance carrier notified him that Johnson was *not* an employee of the Arma company, whereupon the doctor telephoned Masquelier, the Arma's manager, and the latter told him Johnson "*was* in the employ of the Arma Elevator Company and to take care of him and do whatever was necessary."

Masquelier's version of this conversation with the doctor differs somewhat from the doctor's, but that is of no consequence on appeal. Indeed, if this were an appeal in an ordinary action at common law, the usual rule of appellate practice would control—which is, that where there is competent, substantial evidence to support the finding of fact by the tribunal authorized to determine it the supreme

court accepts such findings as conclusive. (*Pittman Co. v. Hayes,* 98 Kan. 273, 277, 157 Pac. 1193.) Still more conclusive, if that were possible, is a trial court's finding of fact in a compensation case, in view of the very narrow limits of the appellate review authorized by the workmen's compensation act. (G. S. 1935, 44-556, and annotation.)

Counsel for appellants presents a careful, logical argument to show that Teter, not the Arma company, had the right to control Johnson's movements, and under cited cases that right determined whether Teter or the Arma company was his employer. This argument, as it seems to us, overlooks an important feature of the evidence. It is true that the Arma company operated its own fleet of ten or twelve trucks as an incident to its usual corporate business. None of these was concerned in this accident. It is also true that Teter, as the J. C. Teter Transfer Company, operated a fleet of five trucks of his own. None of them was concerned in this accident. But there were two other trucks acquired by the Arma company to carry out the experimental arrangement agreed upon by that company and Teter, which they hoped might turn out to their mutual advantage. It would not be inapt to say that in the conduct of this experimental scheme the Arma company and Teter were engaged in an experimental joint adventure, in legal consequence of which not only was the Arma company liable as Johnson's employer, but Teter also, although that point is not argued. What is argued is that Teter and not the Arma company was Johnson's employer; but the commissioner and the trial court declined to take that view of the matter.

This court holds that the trial court's finding that Johnson was an employee of the Arma Elevator Company at the time of his injury, and that such injury was sustained in its service, is sustained by the record.

Passing next to the question whether the amount of the award was sustained by the evidence pertaining to Johnson's earnings, his wages were not based upon a specified daily or weekly wage, but at twenty-five percent of the gross earnings of the truck which he drove. He testified that under that arrangement his earnings averaged six dollars per day, which, on a basis of five days as the minimum week under the rules for calculating compensation prescribed by the statute (G. S. 1935, 44-511), would supply the figure of $30 a week on which to predicate an award of $18 per week (60 percent of $30

a week for 125 weeks—G. S. 1935, 44-510, subparagraph 13) plus other allowances under the statute which are not complained of. Johnson's own testimony as to his earnings would support the amount of the award, and indeed there is no evidence to controvert it.

The record contains no error, and the judgment is affirmed.