No. 39,266

Mrs. Marne D. Silvers, Widow of Marne D. Silvers, Deceased, *Appellee*, v. Earl F. Wakefield and United States Fidelity and Guaranty Company, *Appellants.*

(270 P. 2d 259)

Opinion filed May 8, 1954.

*W. A. Kahrs*, of Wichita, argued the cause, and *Robert H. Nelson, Clarence N. Holeman*, and *Wilbur D. Geeding*, all of Wichita, were with him on the briefs for the appellants.

*John C. Frank*, of Wichita, argued the cause, and *Dale M. Bryant, Morris H. Cundiff, Garner E. Shriver*, and *Glenn J. Shanahan*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Wertz, J.: This action was brought by a dependent to recover compensation for the death of a workman under the provisions of the workmen's compensation act. The trial court made findings of fact and allowed compensation. Respondent brings the case here and contends there was no evidence justifying a finding that an accident occurred or that decedent's death was the result of an accident arising out of and in the course of his employment.

Under G. S. 1949, 44-556, appellate jurisdiction of this court in compensation cases is confined to reviewing questions of law only. In doing so, it is necessary to determine whether the record contains any evidence which tends to support the judgement rendered, and in so considering, this court is required to view all testimony in

the light most favorable to the prevailing party below. If when so considered, the record contains any evidence which supports the trial court's judgment, that judgment must be affirmed; being conscious at all times of the fact that this court has little concern with disputed questions of fact in ordinary lawsuits and none whatever in workmen's compensation cases, except to ascertain whether the record contains any evidence which on any theory of credence would justify the trial court's finding or conclusion of fact. (*Rothman v. Globe Construction Co.,* 171 Kan. 572, 235 P. 2d 981; *Burns v. Topeka Fence Erectors,* 174 Kan. 136, 254 P. 2d 285; *Andrews v. Bechtel Construction Co.,* 175 Kan. 885, 267 P. 2d 469; *Shue v. LaGesse,* 173 Kan. 309, 245 P. 2d 966; *Addington v. Hall,* 160 Kan. 268, 160 P. 2d 649; *Woodring v. United Sash & Door Co.,* 152 Kan. 413, 417, 103 P. 2d 837; *Johnson v. Arma Elevator Co.,* 146 Kan. 965, 967, 73 P. 2d 1018; *Bull v. Patti Const. Co.,* 152 Kan. 618, 628, 106 P. 2d 690; *Leamos v. Wilson & Co.,* 136 Kan. 613, 616-617, 16 P. 2d 490; *Shay v. Hill,* 133 Kan. 157, 158, 299 Pac. 263; *Vocke v. Eagle-Picher Co.,* 168 Kan. 708, 709, 215 P. 2d 185; 5 Hatcher's Kansas Digest [Rev. Ed.], Workmen's Compensation, § 153; West's Kansas Digest, Workmen's Compensation, § 1940 and § 1969.)

It is also a well-established rule in this state that in a compensation case it is not required that the claimant shall establish his right to an award by direct evidence alone, or that he produce an eyewitness to the accident. Circumstantial evidence may be used to establish the claim, and it is not necessary that the circumstantial evidence should rise to that degree of certainty as to exclude every reasonable conclusion other than that found by the trial court. (*Supica v. Armour & Co.,* 131 Kan. 756, 293 Pac. 483; *Kearns v. Reed,* 136 Kan. 36, 12 P. 2d 820; *Evans v. Western Terra Cotta Co.,* 145 Kan. 924, 67 P. 2d 426; *Mitchell v. Mitchell Drilling Co.,* 154 Kan. 117, 114 P. 2d 841; *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793.)

With these well-established rules of law in mind, we will consider respondents' contention whether there is sufficient evidence to sustain the trial court's findings that the death of claimant's husband was the result of an accident arising out of and in the course of his employment. It is admitted that decedent was employed by respondent as a tool dresser on a drilling operation. A review of the record discloses that his working hours were from 3:30 to

11:30 p. m., and on November 10, 1951, as usual he drove his car to work in company with Mr. Ritchie, a driller who was the only one working with him on the well. He was apparently normal and healthy and acted just as he had on previous days. On the lease there was an electric power plant used for lighting purposes. This plant was located about fifteen feet from the tool house where the workmen spent their time when not actually engaged in drilling. This power plant was operated by a diesel engine which required cranking to start the motor. Trouble and difficulty had been incurred numerous times in cranking and starting the motor, and on such occasions it took quite a bit of exertion, particularly in cold weather. On the evening in question, the motor was cold and had not been in operation since the preceding night. It was part of decedent's duty as a tool dresser to start the motor in the light plant. About dusk that evening he went to the power plant and started the diesel engine or motor by cranking it, after which he came back to the tool house and had his supper consisting of chicken noodle soup which had been heating on the stove in the tool house. Shortly thereafter he became very ill. His fellow workman testified that about thirty minutes after decedent had eaten the soup he looked sick. His color was bad and he broke out in a sweat. As the evening progressed, his color became worse. Big drops of sweat were standing all over him. At about 10:30 that evening, decedent became so ill that he was compelled to leave the job and go to the hospital at Russell where he was admitted at 11 p. m. He was immediately examined and treated by Doctors Pettijohn and Schulz, practicing physicians at Russell, who testified he was in a very acute, critical condition. Doctor Schulz stated that he was suffering from extreme shock, had cold, clammy, sweaty skin, was pale and seriously ill; blood pressure unobtainable, heart tones were very faint, and that he looked like he was going to die immediately. Doctors Pettijohn and Schulz were of the opinion that the decedent was suffering from a peptic ulcer and a coronary occlusion or bad heart, and because of his critical condition the doctors were unable to operate upon the decedent for his ruptured or perforated ulcer, although that would have been the proper treatment had his condition warranted such. The evidence disclosed that the immediate cause of the decedent's death on December 9, 1951, was infection and complications resulting from a perforated or ruptured duodenal ulcer. Electrocardiograms were

taken, and other treatment administered by the mentioned doctors in the hospital at Russell until November 24, 1951, at which time he was removed to the Veteran's Administration Hospital in Wichita, where he remained until his death on December 9.

Mrs. Silvers testified that she was called to the bedside of her husband the night he was admitted, and he was broken out with perspiration on his hands and face. He had a peculiar clay color. She asked him why he had gone to work if he didn't feel well, and he answered he was all right until he cranked that blankety-blank engine to start the light plant, and he kept repeating this. He said he had trouble starting the motor that night. The decedent also had informed the doctors upon his admission to the hospital that his first symptoms started after he cranked the motor.

Doctor Pettijohn testified that he viewed the same diesel engine cranked and started by the decedent. The doctor himself attempted to start the same engine and he was satisfied with the amount of exertion required in starting the motor. Both doctors testified that in their opinion the exertion of cranking the motor could have caused and resulted in the physical condition in which they found the decedent the night of his admission to the hospital, and that the exertion expended in cranking and starting such motor was sufficient to precipitate, or result in the rupture or perforation of an ulcer and coronary occlusion. The respondents' own doctor testified on cross examination that intra-abdominal pressure caused by the exertion in cranking a motor of the kind explained to him was sufficient to cause the perforation of an ulcer.

Without further detailing the evidence contained in the record, we are of the opinion that the facts and circumstances of the case amply support the trial court's conclusion of fact that the injury resulting in decedent's death was due to an accident arising out of and in the course of his employment with respondent. It follows that the judgment of the lower court must be affirmed.

It is so ordered.