No. 40,037

BARNETT PETERSON, *Appellant*, v. HILL PACKING COMPANY, and
GREAT AMERICAN INSURANCE COMPANY, *Appellees*.

(290 P. 2d 822)

Opinion filed December 10, 1955.

*George E. McCullough, Robert L. Kimbrough,* and *Charles R. Escola,* all
of Topeka, were on the brief for appellant.

*G. Clay Baker* and *Harold E. Doherty,* both of Topeka, were on the brief
for appellees.

The opinion of the court was delivered by

THIELE, J.: This was a proceeding under the workmen's compensation act and the appeal arises out of the following.

On October 26, 1953, while in the course of his employment at the Hill Packing Company, the workman Peterson sustained an injury. He was afforded medical attention and paid compensation until September 10, 1954, when the Packing Company filed its application with the workmen's compensation commissioner to have a determination made as to the compensation due Peterson. On the hearing it was stipulated that the relationship of employer and workman existed; that the workman sustained personal injury by accident on October 26, 1953, arising out of and in the course of his employment; that he had made claim for compensation; that his wage was $74.85 per week; that he had been paid compensation to November 6, 1954, totaling $1,484.00 and furnished medical and hospital service, and that the issue was whether the workman was entitled to further medical or hospital expense, the nature and extent of his disability, and the amount of compensation to which he was entitled. As a result he was awarded compensation for 53 weeks temporary total disability followed by 85 per cent permanent partial loss of use of his right leg for 124.95 weeks making a total of $4,982.60 of which $1,708.00 was ordered paid in a lump sum, remainder at $28.00 per week until fully paid or

until further order of the commissioner. He was further awarded additional medical and hospital treatment not to exceed $1,500.00. From that award both the workman and the employer and its insurance carrier appealed to the district court.

As the result of hearing the appeals the district court found, in substance, that the award of the compensation commissioner should be affirmed as to the compensation and reversed as to the additional medical and hospital expense and it rendered judgment accordingly. From that judgment the workman Peterson has appealed to this court, his four specifications of error covering contentions later discussed.

Before taking up specific contentions made by the appellant we think it advisable to point out in a general way that appellant contends the injuries sustained by him caused a permanent partial disability to his body generally, and not a scheduled injury disability, and that he is entitled to further medical and hospital treatment.

In our approach to all of appellant's contentions, we bear in mind the rule, recognized by the appellant, that in a compensation case it is the function of the trial court to pass upon the facts, which cannot be disturbed if supported by any substantial competent evidence (*McDonald v. Rader*, 177 Kan. 249, 277 P. 2d 652), and in considering the evidence this court is required to view the same in the light most favorable to the party prevailing below (*Silvers v. Wakefield*, 176 Kan. 259, 270 P. 2d 259), and that whether the judgment is supported by the evidence presents a question of law as distinguished from a question of fact.

Appellant's first contention is that there was no substantial competent evidence on which to base an award for compensation for a scheduled injury rather than for permanent partial general bodily injury. We cannot agree. We may concede that Peterson himself testified that his injury resulted in general bodily disability but other testimony disclosed that he sustained his injury on October 26, 1953. He was treated by a doctor at the request of the employer. This doctor testified that Peterson sustained a fracture of the neck of the femur on his right side and on October 27 the fracture was reduced and a Smith-Peterson nail inserted, a union of the bones did not result and on January 14, 1954, an operation was performed and a Blount angle blade plate inserted, the wound healed and the patient improved so that he was able to get around

with crutches or a cane, but the factured bone remained ununited. The doctor further stated that the insertion of the plate gave support which the patient would not have had otherwise and that the fracture line and all of the surgery was on the femur. The doctor was then asked if he had an opinion as to the degree of loss of use of the leg. He asked if he should confine his answer to the leg and being so told answered that the leg could not be a support for any type of work but that the patient could stand and walk although he would need a cane; that the leg would not be able to sustain prolonged standing nor any activity requiring lifting of weights and he would say as far as the leg was concerned it was 85 per cent disabled. On cross-examination the witness testified at length that because of the nonunion of the femur, a degenerative arthritis of the head of the femur would develop in from one to ten years in the future and on that probable future development the patient had a body disability of from 50 to 55 per cent. The doctor further testified that the patient was sixty years of age and that he would leave the leg alone, and in response to a direct question as to whether further medical treatment would help the patient he answered that it would not at the time. On redirect examination the doctor testified that his opinion as to bodily disability was in relation to what would probably occur in the next one to ten years.

In our opinion there was evidence to support the conclusion of the trial court that the injury was a scheduled one.

Appellant's second contention that the trial court erred in making an award for 85 per cent loss of use of his leg is based on his selection of evidence which tends to prove his contention that his leg could not be used in any type of work. The appellant did so testify. The doctor did testify that the leg could not be a support for any type of work and if that portion of his testimony may be isolated, the finding of 85 per cent disability would not be supported. However, the doctor testified further that the patient could stand and walk; that his leg would not sustain prolonged standing nor any activity requiring lifting of weights and so far as the leg was concerned it was 85 per cent disabled. In our opinion the finding of the trial court is supported by the evidence.

Appellant's third contention is that the trial court erred in limiting the award to a scheduled injury when the uncontradicted evidence was that he was temporarily totally disabled for any type work

until he was rehabilitated. Appellant's argument is premised on his view of what the evidence disclosed and to a great extent is an expansion of his first contention. We do not agree with the premise and find it unnecessary to discuss the authorities to which appellant directs our attention.

Appellant's fourth contention that the trial court erred in denying him further medical attention cannot be sustained. The finding of the court that appellant is not entitled to further medical attention is supported by the evidence of the doctor that further medical attention would not help appellant; that appellant was sixty years of age and that the only other operation that could be done would be a femoral replacement ". . . and then I know he wouldn't go back to work." The only evidence to the contrary was appellant's own statement he thought further medical treatment would be of benefit to him. It cannot be said the court's finding and judgment lacks support in the evidence.

The award and judgment of the trial court is affirmed.