No. 40,571

LILLIE M. ATTEBERY, widow and guardian, et al., Claimants, *Appellees,* v. GRIFFIN CONSTRUCTION COMPANY, Respondent, and U. S. FIDELITY AND GUARANTY COMPANY, Insurance Carrier, *Appellants.*

(312 P. 2d 598)

Opinion filed
May 11, 1957.

*James K. Cubbison,* of Kansas City, argued the cause; *Blake A. Williamson, Lee Vaughan, Donald A. Hardy* and *A. C. Cooke,* all of Kansas City, were with him on the briefs for appellants.

*Robert H. Miller,* of Paola, argued the cause; *A. A. Bryan,* and *R. I. Nicholson,* of Paola, were with him on the briefs for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a workmen's compensation case wherein the award to the claimant below is not contested but the insurance carrier of the respondent seeks to shift liability to the insurance carrier of another company.

This was an action by claimant, Lillie M. Attebery, individually and in her capacity as guardian of Shirley Ann Attebery, Max Burdett Attebery, Ronald Gene Attebery and Dennis M. Attebery, minors, appellees, hereinafter referred to as claimant, to recover compensation under the Workmen's Compensation Act against respondent appellant, Griffin Construction Company, the immediate employer of the claimant's deceased husband, hereinafter referred to as Griffin and respondent, and U. S. Fidelity and Guaranty Company, its insurance carrier, hereinafter referred to as U. S. F. & G.

The petition originally filed before the Workmen's Compensation Commissioner also included respondent, Wea Constructors Company, Paola, Kansas, hereinafter referred to as Wea, and Maryland Casualty Company, its insurance carrier, hereinafter referred to as Maryland.

The record discloses that counsel for claimant, upon the call of the case for hearing before the Examiner, announced that Wea was the prime contractor and Griffin was the subcontractor, designated as principal and contractor, respectively, under the Workmen's Compensation Act. He then elected to proceed against Griffin and U. S. F. & G. and requested that the remaining respondent, Wea, and its insurance carrier, Maryland, be continued off the docket, stating: "We realize that we can't proceed against both of them." Counsel for Wea and Maryland pressed for dis-

missal without prejudice to the rights of the claimant, but counsel for Griffin and U. S. F. & G. objected on the ground that the relationship was not that of principal and contractor, contending that the relationship presented a situation which was a question of fact for the court to decide, as to which of the two, Griffin or Wea, employed claimant's deceased husband and which insurance carrier was involved in the action. The Examiner thought it preferable that claimant dismiss against Wea and Maryland, whereupon claimant requested dismissal without prejudice accordingly, and the Examiner dismissed Wea and Maryland.

The issues in this case grow out of the facts indicated in the foregoing paragraph and show the participation of Wea and Maryland in the initial stage of the proceedings.

A complete hearing was conducted by the Examiner with Griffin and U. S. F. & G. defending the action. No evidence was excluded nor was any objection made by counsel for Griffin and U. S. F. & G. concerning the admission or rejection of any evidence as it appears from the record.

The Commissioner of Workmen's Compensation awarded compensation to claimant and against Griffin and U. S. F. & G. On appeal, the district court considered the record made before the Examiner and adopted the award outlined in detail by the Examiner, as approved by the Commissioner, in addition to other findings of fact and conclusions of law. Griffin and its insurance carrier, U. S. F. & G., have appealed to this court from all findings, orders and the award of the district court and from all proceedings as presented, introduced and shown before the Commissioner of Workmen's Compensation.

The appellants do not dispute the claimant's right to an award or the correctness of the award given, "but are questioning the district court holding these appellants alone are liable for all of the payment of the award, etc."

Appellants, Griffin and U. S. F. & G., indicate that there is no serious dispute concerning the facts and adopt the findings of the district court (hereinafter set forth) as a forthright statement of what occurred between the parties leading up to the controversy, except for the use by the court of the word "sublet" in the second paragraph, and the court's use of the words "principal" and "contractor," in referring to Wea and Griffin respectively, which they contend are words of conclusion. They say in their brief the ap-

peal principally concerns the issue *as to which of the two insurance companies is liable for the payment of compensation, or whether both are liable;* and the error of the court in reaching its legal conclusions from the undisputed established facts.

The issue just stated is further limited by the appellants' sole contention in their brief that the established facts disclose a joint venture existed between the two respondents, Wea and Griffin, and therefore, both Wea and Maryland should have been retained in the proceedings.

The accident which resulted in the death of claimant's husband occurred on the 9th day of January, 1956. Claim was filed within the time under the Workmen's Compensation Act against both Griffin and Wea, and Wea was dismissed together with its insurance carrier, as heretofore related. In due course, after appeal to the district court, the following findings of fact and conclusions of law were entered on the 16th day of October, 1956:

"FINDING OF FACT.

"1. In the summer of 1955 the City of Paola by proper proceedings issued bonds to pay for and undertook substantial municipal improvements. The improvements were listed under three different topics and numbered 1, 2 and 3. Wea Constructors were the successful bidders on the contract and the general contract for such construction was entered into between the City of Paola and Wea Constructors, a partnership.

"2. In this matter we are not concerned with the parts of the improvement included within Sections I and III of the general contract, but only Section II. This part of the contract provided for the building and extension of sewers within the city. Wea Constructors are a partnership and protected generally by the Maryland Casualty Company with reference to Workmen's Compensation. Wea Constructors sublet the contract insofar as it applied to Section II to Griffin Construction Company, a corporation, with its principal place of business in Kansas City, Kansas, which company is protected generally by U. S. Fidelity and Guaranty Company with reference to Workmen's Compensation.

"3. About the month of September, 1955, when operations were beginning, certain labor difficulties arose. Wea Constructors were operating with non-union employees. Griffin Construction Company generally operated with union employees. There was at that time a picket on the job against Wea Constructors and it was evident that Griffin Construction Company would have difficulty in attempting to use union labor along with non-union labor on the construction of the project. To avoid the imminent labor difficulties it was agreed between the principal and the contractor that the principal, Wea Constructors, would put the workmen on their payroll and thus avoid the necessity of the contractor sending his men onto the job and thus avoid the trouble. The principal does not chiefly engage in this sort of construction

and it was agreed that the contractor would send his foreman who was skilled in such construction who would have charge of the progress of the work on this project, and accordingly one Don Cokeley who had been previously employed by the contractor was transferred to the pay roll of the principal and undertook the recruiting of laborers and supervised the actual construction under Section II of the contract.

"4. The contract between the city and the principal provides that the principal shall furnish protection in way of performance and statutory bonds and carry Workmen's Compensation for the protection of the employees. It further provides that in the event of subletting any portion of the contract that the principal should have the right to require of the contractor protection with reference to these features.

"5. No formal contract was put in writing between the principal and the contractor. An exhibit consisting of four sheets, dated September 23, 1955, on a blank headed 'Purchase Order' was introduced on which Wea Constructors wrote Griffin Construction Company, 'to furnish and place all items of work required for completion of Section II, North Side sanitary sewer, Paola, Kansas, in complete accordance with the plans and specifications and including all expenses incidental to construction for the following unit prices; less 1% of total price, for bond.' Thereafter follows a statement of unit prices for clay pipe, depth to which the same was to be laid and many itemized charges. At the close of the purchase order it recites, 'Terms: As indicated in the specifications. Please sign and return yellow copy of order,' and below this, 'accepted, M. C. Griffin, Griffin Construction Company.' Under this 'purchase order' work progressed.

"6. Under the direction of Cokeley men were employed and labor was begun on the project, part of which included the digging of ditches and laying of pipe. Weekly pay rolls were made up from time sheets kept by Cokeley and these pay rolls were processed in the office of Wea Constructors and the workmen paid. All the matters of deductions on account of unemployment compensation, income tax and such items were deducted from the employees' earnings and the net earnings paid to the employees upon checks of Wea Constructors. Wea Constructors deducted proper moneys for the proper agencies on account of the respective deductions and in addition thereto added 1% as the cost of performance and statutory bonds and the amount of premium due upon Workmen's Compensation Insurance. All these items were totaled and the gross amount deducted from the money earned by the contractor on performance of the work as the work progressed and as approved by and paid for by the city. The amounts withheld were still in the hands of Wea Constructors at the time of the accident. No premium was paid to either Maryland Casualty Company or U. S. Fidelity and Guaranty Company. On December 6, Wea Constructors reported to Griffin Construction Company amounts paid out in their operation and under the heading of 'payments made for your account, pay roll insurance 11.36%, $163.02.' While this exhibit recites that the moneys had been paid out, it was in fact not paid and there is no evidence in the record as to which of the two insurance companies Wea intended to pay this premium.

"7. Certificate of insurance was filed with the city by the Maryland Cas-

ualty Company. No certificate was asked of or filed by Griffin Construction Company or U. S. Fidelity and Guaranty Company.

"8. Operations were carried on in this respect until the 9th day of January, 1956, when Claimant's deceased was crushed to death by a cave-in in a sewer ditch in which he was working.

"9. During the period of operation U. S. Fidelity and Guaranty Company had audited the books of the Griffin Construction Company and found no labor on its pay roll and therefore claimed no premium. There is no evidence to show whether Maryland Casualty had likewise made an audit.

"10. The Griffin Construction Company had submitted its bid for the share of the work it undertook prior to the letting, which bid was approximately $14,632 and was acceptable to Wea, but Wea, considering the bid too low and without consulting with Griffin, increased the bid by some four or five hundred dollars and this amount Wea agreed to divide with Griffin Construction Company.

"11. The deceased was paid wages at the rate of $1.25 per hour and worked 40 hours per week and had for the four full weeks worked on the project an average weekly overtime pay of 70 cents and the weekly wage of the deceased was $50.70. The award outlined in detail by the Examiner is adopted as a finding as to the amounts due.

"12. Claimant took proper procedural action to make claim under the Workmen's Compensation Act against both Wea Constructors and Griffin Construction Company and their respective insurance carriers. When the matter came on for hearing before the Commissioner the Claimant asked and was granted leave to dismiss from the docket the claim against Wea Constructors and Maryland Casualty Company and proceed against the contractor, Griffin Construction Company and U. S. Fidelity and Guaranty Company. This was done over the objection of Respondent contractor and his insurance carrier.

. . . . . . . . . . . . .

"CONCLUSIONS OF LAW.

"1. The death of the decedent occurred under such circumstances as to come within the purview of the Workmen's Compensation Law and the Respondents' Griffin Construction Company and Wea Constructors would each be liable to make the payments required by the act.

"2. Under the facts of this case Wea Constructors is the principal and Griffin Construction Company is the contractor under the terms of G. S. 1949, 44-503. Wea Constructors carried the pay roll for the accommodation of both parties but the cost of the pay roll was charged against Griffin Construction Company and under the facts of the case Griffin Construction Company was doing the work.

"3. The Respondent, Griffin Construction Company, and its insurance carrier, U. S. Fidelity and Guaranty Company, are liable to the Claimant in the sums set out in the Examiner's award and these detailed figures will be carried into the Journal Entry to be prepared by the attorneys."

Basically, the dispute in the instant case arises over the interpretation placed upon two cases decided in this court. The one is *Coble*

v. *Williams,* 177 Kan. 743, 282 P. 2d 425, and the other is *Employers' Liability Assurance Corp. v. Matlock,* 151 Kan. 293, 98 P. 2d 456.

The *Coble* case concerns the construction of G. S. 1949, 44-503, as it applies to claims filed under the Workmen's Compensation Act against a principal and/or a contractor as defined therein. The case is authority for the proposition that where a workman proceeds under the Workmen's Compensation Act against his immediate employer (the contractor or subcontractor) to recover compensation for his injury sustained, he may not join the principal in the same action as an additional respondent and recover an award against both the contractor (subcontractor) and the principal.

In the *Coble* case this court said:

". . . The purpose of the statute [G. S. 1949, 44-503] was to prevent an individual from contracting to another a portion of his business operation, and thus avoid liability for compensation to a workman injured in the performance of duties under the contract, when no recovery could be had from the subcontractor or its insurance carrier, because they are financially unable to pay the compensation award. *The statute is primarily for the protection of the injured workman,* but it does not follow that recovery may be had against both the subcontractor and principal in the same action. . . .

"Subsection (*c*) of the Act specifically provides that the workman shall not be prevented from recovering compensation against his immediate employer (the subcontractor) *instead* of the principal. *In the event the workman's action is brought against his immediate employer* (as in the instant case), *there is no provision in the mentioned statute giving him the right to interplead the principal.* The very wording of the section seems to indicate there can be only one proceeding and one judgment.

". . . If the workman brings his action against his immediate employer, the subcontractor, and recovers an award, the subcontractor is primarily liable, and contingent liability is upon the principal, should the subcontractor or his insurance carrier be unable to respond and pay the award, assuming the workman complies with the provisions of G. S. 1949, 44-520a.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Inasmuch as the claimant commenced his action against his immediate employer, the subcontractor, to determine the extent of his injuries and the amount of compensation due him, *the Lead Company was neither a necessary nor proper party respondent in that action,* and the trial court did not err in refusing to render judgment against the Lead Company." (pp. 750-752.) (Emphasis added.)

Appellants, Griffin and U. S. F. & G., rely on *Employers' Liability Assurance Corp. v. Matlock,* supra, where an insurance carrier *filed an original action directly in the district court* seeking to relieve itself from paying compensation to an employee in whose favor an award had previously been made by the Commissioner

of Workmen's Compensation. In the proceedings before the Commissioner all three had participated: the employee, the employer and its insurance carrier (petitioner). The petition sought to determine whether a policy of insurance was in effect at the time of the accidental injury and covered the liability of the employer where it was alleged that the policy was procured through fraud or mutual mistake. A demurrer to the petition was sustained on the ground that the district court had no jurisdiction, holding that the State Commissioner of Workmen's Compensation was the proper forum for determining the issue. The case is authority for the propositions succinctly summarized by Syllabi 1 and 2 as follows:

"1. The workmen's compensation law is a comprehensive act and covers every phase of a workman's right to compensation and the procedure for obtaining it.

"2. The remedy under the compensation act is complete with a procedure distinctly its own and that procedure was intended to be and is substantial, complete and exclusive. All issues pertaining to liability of the employer or insurance carrier for compensation are required to be presented, heard and determined in accordance with the procedure provided by the act, and the district court is without jurisdiction to entertain an action by the insurer against the employer and employee, after the injury of the latter, to cancel or reform the insurance policy, until the remedies provided by that act have been exhausted."

An employee was denied the right to proceed against an insurance carrier by an original action in the district court in *McGuire v. United States F. & G. Co.*, 134 Kan. 779, 8 P. 2d 389, until the remedies provided in the act were exhausted. The court there held that the remedy and procedure under the Workmen's Compensation Act were exclusive.

The *Matlock* case quoted with approval a New York case (*Matter of Skoczlois v. Vinocour*, 221 N. Y. 276) in support of the proposition that if an insurance carrier may be made a party to the original application to the Commissioner for Workmen's Compensation, all its rights may be there litigated and determined precisely the same as those of the employer, including a determination of the question as to whether there was at the time of the injury a valid outstanding policy of insurance issued by it.

Appellants' case is predicated on the ground that the overhang in the *Matlock* case is sufficient to require the controversy between the two insurance carriers, U. S. F. & G. and Maryland, to be litigated in this action.

The theory by which U. S. F. & G. seeks to thread its way into

a more favorable position requires this court, upon the admitted facts, to find as a matter of law that a joint adventure was the true legal status of the relationship between Wea and Griffin. Once this is established, it is argued that Griffin as a joint employer with Wea places Maryland on the risk in view of the certificate filed with the City of Paola disclosing its coverage for the job contracted by the city, thus leaving U. S. F. & G. out of the case.

Should this court not go to the full extent above urged, appellants then contend that under a joint adventure both U. S. F. & G. and Maryland are liable for payment of the compensation and not just U. S. F. & G.

The first difficulty encountered is the status of Wea and Maryland as parties to this action. Appellants contend Wea and Maryland were necessary parties to the action. Both were initially parties before the Workmen's Compensation Commissioner and actively participated in events which led to their dismissal by the claimant. At the hearing before the Examiner, Wea and Maryland co-operated with the claimant in the presentation of the claimant's case. Two of the three partners of Wea testified and made complete disclosures of fact concerning the relationship of Griffin to Wea in this business venture. Wea's books and records were fully disclosed.

Nevertheless, the fact remains that Wea and Maryland are not parties to the action. Were they necessary parties?

The first query is whether claimant is entitled to assume the burden of proving a principal-contractor relationship, where it is contested, and elect to proceed against such contractor, declared to be the immediate employer of claimant's deceased husband, prior to proving such relationships. The effect of an affirmative answer would be to eliminate the declared principal and its insurance carrier from the proceeding in which the determination is made. It must be noted that it is the declared contractor and its insurance carrier that are objecting and they are parties to the action.

Had the situation been reversed with the declared principal and its insurance carrier objecting as parties to the action, the question would not arise. In that situation the principal is authorized to implead the contractor (subcontractor) under the provisions of G. S. 1949, 44-503e.

*Subcontracting* under the Workmen's Compensation Act is defined by G. S. 1949, 44-503, as follows:

"(a) Where any person (in this section referred to as principal undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. (b) Where the principal is liable to pay compensation under this section, he shall be entitled to indemnity from any person who would have been liable to pay compensation to the workman independently of this section, and shall have a cause of action therefor. (c) Nothing in this section shall be construed as preventing a workman from recovering compensation under this act from the contractor instead of the principal. . . . (e) A principal contractor, when sued by a workman of a subcontractor, shall have the right to implead the subcontractor. (f) The principal contractor who pays compensation to a workman of a subcontractor shall have the right to recover over against the subcontractor."

In the present action before the Commissioner claimant has elected to bring this action against her deceased husband's immediate employer, thus assuming the full burden of proving that Griffin was not only the immediate employer of the deceased but the subcontractor of Wea within the terms of the Workmen's Compensation Act. This, claimant had a perfect right to do, unless the *Matlock* case qualifies such right.

Application of the general statement of law for which the *Matlock* case stands to the present facts and circumstances would extend the rule far beyond the facts there presented. It must be emphasized that the fundamental premise in the *Matlock* case concerns the *workman's right to compensation and the procedure for obtaining it.*

Under the *Matlock* case U. S. F. & G. could litigate its liability, under the policy of insurance issued by it, with the assured, Griffin, or claimant. Concerning such liability, U. S. F. & G., insofar as the record before this court discloses, made no objection. This policy of insurance was introduced into evidence and contained the standard policy provisions required of an insurance company under the Kansas Workmen's Compensation Act. Such policy is completely discussed in the *Matlock* case. Reference is specifically

made to the portions of that opinion applicable to the discussion herein as supplemental hereto.

By the provisions of G. S. 1949, 44-532, the insurer, U. S. F. & G., is subrogated to the rights and duties of the employer, Griffin, under the act so far as applicable. It also provides that every employer, subject to the act, is required to secure compensation to his employees by adequate insurance. (*McGuire v. United States F. & G. Co.,* supra.) Under Griffin's insurance policy with U. S. F. & G. the estimated advance premium for the fiscal year ending July 1, 1956, was $8,807.50.

Under the act the insurance company must submit to the terms of the Kansas Workmen's Compensation Act and accept all of its terms and provisions. This was contained in the policy of U. S. F. & G. in the instant case. G. S. 1955 Supp. 40-2212 (formerly G. S. 1949, 40-1109m) provides:

". . . and jurisdiction of the insured shall be jurisdiction of the insurer and the insurer shall be bound by every agreement, adjudgment, award or judgment rendered against the insured . . ."

By this appeal U. S. F. & G., who was a party to the proceedings before the Workmen's Compensation Commissioner, seeks to draw in another respondent and its insurance carrier and litigate rights, not relative to the obligation of U. S. F. & G. on its own policy to the respondent, Griffin, or the claimant, but its rights against the other insurance carrier. We are of the opinion that this is not only contrary to the spirit of the Workmen's Compensation Act but also contrary to the intention of the legislature in applying the Act which is designed primarily for the protection of the injured workman or his dependents.

At no place is this procedure authorized by the Workmen's Compensation Act itself. It follows that the remedies under the Workmen's Compensation Act are exhausted, thereby giving rise to an independent action by one insurance carrier against another on such matters incidentally arising out of contract which have no direct relation to the injured workman's right to compensation. Independent action arising out of incidental matters was contemplated by the Act where reference is made to indemnity and rights of subrogation.

Though not directly in point, an analogous case involving two insurance carriers was before this court in 1953. In *Justice v. Continental Can Co.,* 174 Kan. 539, 257 P. 2d 564, the workman suffered injury to his right eye and recovered compensation. An appeal thereon was dismissed and the compensation paid. The workman

later received injury to the left eye while working for the same employer, who in the meantime had obtained Workmen's Compensation insurance from another insurance carrier. In an action by the workman for compensation for the subsequent injury to the left eye, a controversy arose concerning the rights of the two insurance carriers, one of which had paid compensation by reason of the previous injury. Appellants in the left eye case, which arose subsequently, sought to have the appeal in the right eye case reinstated. On these facts this court said:

"Appellants ask this court to determine the liability of each of the insurance carriers with respect to the claims for injuries to the respective eyes. *The concern of this court under the compensation act pertains primarily to the liability of the employer to the workman and not to the settlement of independent controversies which may arise between the various insurance carriers.* Moreover the insurance carrier in the right eye case, Continental Casualty Company, was not a party to the hearing before the commissioner or in the district court in the instant left eye case. It is not a party to the instant appeal. Obviously this court has no jurisdiction to determine its rights or liability. Touching this subject see *Evans v. Western Terra Cotta Co.*, 145 Kan. 924, 928, 67 P. 2d 426; *Standard Surety & Cas. Co. v. Standard Acc. Ins. Co.*, 104 F. 2d 492. Whatever jurisdiction this court may have over insurance carriers in compensation cases under some circumstances it does not extend to the settlement of their instant controversy on appeal in this case." (p. 552.) (Emphasis added.)

If it is assumed that appellants' position is tenable—that Wea and Maryland are necessary parties, an anomalous situation arises, particularly in view of the admissions of the parties herein.

Under the provisions of the Workmen's Compensation Act the district court has no authority to remand a case to the Commission for further proceedings. It is the province of the district court to review a case upon the transcript from the Commission and to grant or refuse compensation or to modify the award in accordance with its determination of the questions of fact and law. (*Fougnie v. Wilbert & Schreeb Coal Co.*, 130 Kan. 410, 286 Pac. 396, and *Willis v. Skelly Oil Co.*, 135 Kan. 543, 11 P. 2d 980.) The jurisdiction of the Supreme Court is restricted to questions of law based upon the findings and orders of the district court. (G. S. 1949, 44-556.)

In the case of *Fougnie v. Wilbert & Schreeb Coal Co.*, supra, it was stated:

"Considering these points together, it is of course both the statutory and moral duty of the commissioner to give the claimant and his adversary a fair opportunity to present their evidence; and the court sees no reason why tendered evidence excluded by the examiner could not be put in the form of

affidavits or depositions and made part of the transcript which goes to the district court for its independent decision on the law and the facts. But there is nothing in the statute which contemplates that the trial court is authorized to hear further evidence or try the proceedings *de novo*. . . ." (p. 413.)

We have little difficulty in concluding that Wea and Maryland were not necessary parties to this action. A claimant under the Workmen's Compensation Act has the right to file his claim against his immediate employer, who in this case claimant declares to be a subcontractor. By authority of the *Coble* case claimant is not permitted to join the principal in that action since he is denied the right to recover against both. Under these circumstances, claimant is entitled to assume the burden of proving that Griffin was the immediate employer of her deceased husband and that the relationship of Principal-Contractor existed between Wea and Griffin, respectively.

Appellants contend in this situation that Maryland and Wea are still in the case. They argue that the trial court found in Conclusion of Law No. 1 that Griffin and Wea would each be liable to make the payments required by the Act. Appellants reason that since Wea had knowledge of the injury and death of the decedent, who was admittedly an employee of Wea, and under the statutory provisions of the policy since notice of injury to the employer is notice to the insurer, and the insurer is bound by and subject to any finding, judgment, award, decree, order or decision rendered against the insured, this court can completely determine this action here and now.

Aside from appellants' bold assumption that the decedent was admittedly an employee of Wea, the fallacy in this argument lies in the fact that Wea was not a party to the action and the trial court in finding Wea liable clearly made an erroneous finding in this respect. The same is true concerning the liability of Maryland. Neither Wea nor Maryland were parties to this action and the trial court was without authority to determine their rights. As between Wea and Griffin or U. S. F. & G. and Maryland their rights have not *res judicata*. This is dramatically illustrated by comparing the case of *Kirkpatrick v. Ault*, 174 Kan. 701, 258 P. 2d 262, where it was held upon the evidence presented that A. W. Ault did not have an undivided one-half interest in the real property in question, with the case of *Kirkpatrick v. Ault*, 177 Kan. 552, 280 P. 2d 637, where an additional party was added, and this court

upon the same identical documentary evidence as presented in the previous case held that A. W. Ault did have an undivided one-half interest in the real property, the question not being *res judicata* by reason of the previous proceedings.

Appellants next contend that the trial court erred in finding Griffin was a subcontractor contrary to the substantial, competent evidence showing the parties were engaged in a joint adventure.

The argument advanced is that this court can draw the legal conclusion as to whether a joint adventure relationship existed between the respondent and Wea as well as the trial court, once the facts have been established.

This leads to an inquiry as to whether we are confronted with a finding of fact or a conclusion of law. The "admitted facts" or "established facts" in the instant case of which appellants speak are such facts determined by the trial court as they choose to designate as facts. Somewhere short of the ultimate facts determined by the trial court, if that they be, the appellants draw the line beyond which they designate the determinations to be conclusions of law.

This is material. In *Fitzwater v. Boeing Airplane Co.*, 181 Kan. 158, 309 P. 2d 681, where a full discussion of fact cases was undertaken, this court said:

"As to questions of fact this court reviews the record only to determine whether it contains substantial evidence to support the trial court's finding, and in doing so all the evidence is reviewed in the light most favorable to the prevailing party below. If substantial evidence appears, such finding is conclusive and will not be disturbed on review. (*Silvers v. Wakefield*, 176 Kan. 259, 260, 270 P. 2d 259; and *Barr v. Builders, Inc.*, supra. [179 Kan. 617, 296 P. 2d 1106].)

"Only in the event the evidence is undisputed, is the question one of law for appellate review. (*Kober v. Beech Aircraft Corporation*, supra. [177 Kan. 53, 276 P. 2d 335].)" (p. 165.)

A general discussion of this subject is presented in 89 C. J. S., Trial, § 647, pp. 486 and 487, where it is said:

"A conclusion of law may be distinguished from a finding of fact in that it is arrived at through the application of a rule of law and not as a result of a process of natural reasoning. The line of demarcation between findings of fact and conclusions of law is not easily drawn in all cases, and whether a particular statement is a conclusion of law or finding of fact, or mixture of the two, may depend on the circumstances involved, such as averments of a complaint, other findings, the intention of the trial court as shown by an examination of the issues and evidence, and the whole record . . . An ultimate finding based on special findings of fact may be a conclusion of law.

Where the evidence is undisputed, the findings of the court amount to conclusions of law. . . ."

The only material issues herein before the Commission were:

(1) Whether or not the relationship of employer and workman existed between the deceased and respondent, Griffin, at the time of the accidental injuries, and (2) if so, whether the accident arose out of and in the course of the employment.

Both the Commissioner and the district court found in the affirmative on each of these issues. The district court specifically found in Conclusion of Law No. 2 that Griffin was doing the work under the facts of the case. Upon controverted evidence this was clearly a finding of fact. The trial court's calling a finding of fact a conclusion of law does not detract from its potency as a finding of fact. (*Raynes v. Riss & Co.*, 152 Kan. 383, 385, 103 P. 2d 818.) These findings alone, under all of the facts and circumstances in the case, if supported by substantial, competent evidence, would support the judgment of the trial court.

The district court, however, specifically found that the relationship of principal and contractor existed between Wea and Griffin, respectively. On this point there is authority holding such determination to be one of fact.

In the recent case of *Aguilera v. C. & S. Well Service*, 178 Kan. 545, 289 P. 2d 1062, this court said:

". . . The statute pertaining to appeals in Workmen's Compensation proceedings (G. S. 1949, 44-556), provides that any party to the proceeding may appeal from any award of the Compensation Commissioner to the district court . . . On the hearing of that appeal the district court determines the facts, and the conclusions it reaches thereon are of fact and not of law . . .

". . . A different rule applies when an appeal is taken to this court from any finding or order of the district court, the same statute as is noted above limiting our review to questions of law. We examine the record as it reaches us only to determine if there is evidence, whether opposed or not, warranting the conclusions and findings of fact made by the district court. We are not concerned with evidence from which a contrary conclusion might have been drawn. . . ." (p. 547.)

The findings in the *Coble* case pertaining to the relationship of two employers, where the trial court determined the principal-contractor relationship to exist, were labeled findings of fact. The court said:

"As stated, the trial court found a principal-contractor relationship between Williams and the Lead Company, and that the work being performed by

Williams was a part of the trade or business of mining being carried on by the Lead Company. In a workmen's compensation case, it is the function of the trial court to pass upon the facts, and its factual findings cannot be disturbed on appellate review if they are supported by any substantial, competent evidence . . .

"In determining whether the principal-contractor relationship existed between Williams and the Lead Company, and to whom claimant should look for compensation, the first test to be applied is, 'Whose work was being performed?' out of which the injury arose, and if such work was an integral part or a reasonable incident of the trade or business of one person who undertook to have the work performed for him by another, then the relationship of principal-contractor exists. . . ." (p. 747.)

Turning our attention now to the instant case, we cannot say that the evidence presented by the record before the trial court was undisputed. The finding by the trial court that the relation of principal-contractor existed between Wea and Griffin, respectively, is supported by an abundance of substantial, competent evidence. The trial court found that Griffin was doing the work of constructing the sewer job: Griffin sent Cokeley to the Paola sewer job with authority to build the job by hiring men, ordering material and putting the sewer in; Griffin's equipment and materials were used; Cokeley was Griffin's foreman and in charge of the sewer job at Paola; the insurance funds held in the hands of Wea were deducted from the amount due and owing Griffin under the contract and were not paid to either Maryland or U. S. F. & G. at the time the accident occurred; Griffin paid the expenses of Cokeley while away from his home on the Paola sewer job to the extent of $25.00 per week by checks written on Griffin, as was customary when their employees were away from home; Griffin gave Cokeley along with other employees of Griffin Christmas gifts in December of the year in which they were working on this sewer job; Griffin paid a man to light flares on this sewer job; Griffin furnished all labor and carried the payrolls after the accident occurred for a period of thirty days to complete the job in question; and prior to the Paola sewer job Wea and Griffin had another job that was admitted to be an undertaking in which Griffin was the subcontractor.

The lower court was justified from all this evidence in assuming that Wea, by carrying the payroll on this particular sewer job, was participating in a fictional scheme to circumvent labor difficulties only with no intention that the relationship of the parties should be that of anything other than principal and contractor. Many

other facts appear in the record too numerous to mention indicating that as between Griffin and Wea, Griffin was regarded as the subcontractor. In fact, in a letter dated April 4, 1956, in writing to Griffin, Wea stated as follows:

"You will note that the above figures cover our subcontract with you from the start of the job as no payment was made with our statement of estimated job status dated December 6, 1956."

While not too much has been said by the parties, actually the weekly payroll sheets introduced into evidence disclose that the payroll was carried under the name "Carrothers Construction Company," Carrothers being one of Wea's partners. The contract number given on these weekly payroll sheets was given as "Griffin Construction Company."

Appellants rely on *Corpora v. Kansas City Public Service Co.,* 129 Kan. 690, 284 Pac. 818, for the proposition that the determination of joint adventure in the instant case is a conclusion of law to be deduced from the evidence. The court there said:

". . . While the trial court made a finding that the injury to the workman did not arise out of his employment, that finding was a conclusion correctly or incorrectly deduced *from the evidence about which there was no serious controversy.* . . ." (p. 693.) (Emphasis added.)

This is conceded to be the rule where the evidence is undisputed, but that is not the situation we have in the instant case.

In view of the foregoing, it is unnecessary to review the many cases cited by appellants in which this court considered the elements from which a joint adventure or partnership is determined. In so doing we have not overlooked the case of *Johnson v. Arma Elevator Co.,* 146 Kan. 965, 73 P. 2d 1018. We regard the dictum there ventured pertaining to joint adventure on a question not raised by the parties inapplicable, since the trial court here specifically found the principal-contractor relationship to exist between Wea and Griffin. Under the circumstances heretofore discussed, such finding is conclusive upon review.

In reaching the foregoing conclusion we have not overlooked, but reject as here inapplicable, the case of *Mendel v. Fort Scott Hydraulic Cement Co.,* 147 Kan. 719, 78 P. 2d 868, written in 1938 before either the *Coble* or *Matlock* cases were decided. The court there held that both respondents and their respective insurance carriers, who were all parties to the action, could be held liable to an injured workman for compensation under the Act, where the

relation between the two respondents to the workman was that of general employer and special employer and both had a *joint right of supervision over the workman.* Unfortunately, the case does not report whether all parties were content to litigate their rights in one action.

The contention of appellants that Maryland is entirely on the risk by reason of the trial court's finding that a certificate of insurance was filed by Maryland with the City of Paola showing Workmen's Compensation insurance coverage on Wea's contract with the city, thus leaving U. S. F. & G. out of the case, is without merit in this action. Maryland's certificate was to satisfy the City of Paola that Workmen's Compensation insurance was carried on the project covered by its contract let to Wea. The city was not concerned with subcontractors who performed part of the contract let to Wea, or the liability of such subcontractors to their own employees under the Workmen's Compensation Act. Wea protected itself in the prime contract by a provision authorizing it to demand Workmen's Compensation insurance of those with whom it sublet contracts.

The judgment of the trial court is affirmed.