No. 45,974

CLARENCE D. BRANNUM, *Appellant*, v. SPRING LAKES COUNTRY CLUB, INC. and FIREMEN'S INSURANCE COMPANY, *Appellees*.

(485 P. 2d 226)

Opinion filed May 15, 1971.

*Don Matlack*, of Wichita, argued the cause and *John R. Blair, Richard V. Foote, Ronald H. Rogg, Donald E. Lambdin, Gerald W. Scott, William F. Kluge, III* and *Gary H. Jarchow*, all of Wichita, were with him on the brief for appellant.

*Harry E. Robbins, Jr.*, of Gamelson, Hiebsch, Robbins & Tinker, of Wichita, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: This workmen's compensation proceeding is before the court a second time.

The first appeal determined that claimant's injury arose out of and in the course of his employment. (See *Brannum v. Spring Lakes Country Club, Inc.*, 203 Kan. 658, 455 P. 2d 546.)

This appeal is brought to finally determine the extent and nature of the claimant's disability.

We need not detail the circumstances out of which claimant's injury arose. These may be obtained from the opinion in the first appeal. Suffice it to say claimant, Clarence D. Brannum, received five bullet wounds from a .22 caliber pistol. One bullet struck him in the chest, one in the arm, one in his shoulder, one grazed his arm and one grazed his skull. His initial hospitalization lasted from March 16 to March 30, 1965. He returned to work immediately on his release from the hospital. He was finally hospitalized from April 27 to May 31, 1965, for removal of a bullet lodged in his

shoulder-arm joint. On removal of the bullet and release from the hospital he returned to work.

The claimant appeals from the court's finding that claimant suffered a permanent disability to his right arm of 30 percent loss of use of such arm, a scheduled disability only.

The quest in this appeal will be to determine whether the evidence when viewed in the light most favorable to the district court's award supports the findings of fact of the trial court. (*Riedel v. Gage Plumbing & Heating Co.*, 202 Kan. 538, 449 P. 2d 521; *Osman v. City of Wichita*, 203 Kan. 313, 454 P. 2d 427.)

There was medical testimony the claimant suffered no permanent bodily disability from the bullet wound in the chest or from the bullets which grazed his arm and skull.

The bullet which entered the right arm damaged the radial nerve in that arm and resulted in some loss of motion in his arm and a weakening of grip in his right hand. The bullet which lodged in his shoulder-arm joint did not damage the bone structure of the shoulder. It lodged in and was removed from the "greater tuberosity of the humerus", which is the upper end of the arm bone and fits into the shoulder capsule. After the bullet was removed claimant continued to play golf and, although his score did suffer, his score on the golf course is usually par.

The testimony which precipitated the present appeal was given by Dr. Kaufman. He testified generally that claimant had a permanent disability as a result of the shoulder wound and arm wound. He then testified, "Considering the various injuries, and using the guide put out by the American Medical Association as to what this would all total up, I figured this would be about 30 percent of his arm *or* 18 percent of his body." These percentages were given in the alternative.

The loss of use of an arm is a scheduled disability under K. S. A. 44-510 (3) (c) (13) [now K. S. A. 1970 Supp. 44-510d (13)] which provides an award of sixty percent (60%) of the average weekly wages, not to exceed $42.00 per week, during two hundred ten (210) weeks. Disability of the body as a whole is nonscheduled under K. S. A. 44-510 (3) (c) (24) [now K. S. A. 1970 Supp. 44-510e] which provides an award of sixty percent (60%) of the difference between the amount he was earning prior to said injury and the amount he is able to earn after such injury, not to exceed $42.00 per week, during a period not exceeding four hundred fifteen (415) weeks.

In *Peterson v. Hill Packing Co.*, 178 Kan. 697, 290 P. 2d 822, claimant suffered a fracture and non-union of the upper leg bone. The medical testimony indicated claimant received a scheduled injury resulting in 85% disability of the leg or a probable general body disability of 50% because of the loss of use of the leg. The trial court held that claimant suffered a scheduled disability of the leg. On appeal this court held there was evidence to support the conclusion of the trial court and the disability was a scheduled one.

*Peterson* is similar in many respects to the present case. There we applied the rule that if there is evidence to support the finding of a scheduled disability the district court's judgment should be affirmed.

Claimant relies upon *Bray v. Carrothers Construction Co.*, 131 Kan. 766, 293 Pac. 504. In *Bray* claimant sustained a fracture and non-union of the collar bone. The trial court found the injury to the collar bone and the muscles of the shoulder caused pain which limited claimant's ability to perform in his former employment because the condition limited use of his arm. Physical injury was limited to the collar bone and shoulder muscles but the trial court concluded that the injury resulted in a scheduled disability of the arm. This court reversed. It held as a matter of law the finding of injury to the collar bone and shoulder muscles required an additional body disability and an award beyond the scheduled disability of the arm.

We believe that the Bray case is distinguishable from our present case by reason of the location, extent and nature of the injury resulting in the disability.

In the present case as previously pointed out the claimant suffered no disability from the bullet wounds in his chest and head. The doctors so testified and there is no substantial evidence to the contrary.

The damage to the radial nerve in the mid-arm resulted in some loss of hand grip. It also resulted in some loss of motion and use of his arm. The question raised here is more dependent upon the extent and nature of the injury to the shoulder-arm joint. It is noted that the bone structure of the shoulder was not fractured by the bullet. Dr. Kaufman testified concerning the removal of the bullet. He stated that the bullet was removed from the right shoulder; it was found to be directly in the joint beneath the rotator cuff; there was some damage to the cartilage of the shoulder joint,

although this did not appear to be too severe, considering the nature of the injury; the joint and tendons were repaired; and claimant recovered from the operation without difficulty. He further testified there would continue to be some pain in the joint and some limitation of motion of the arm. However, he discerned a gradual improvement in the six months which followed the operation. The claimant returned to his work at Spring Lakes Country Club, Inc., as soon as he was released from the hospital.

We conclude there is evidence in the record to support the finding that claimant's injuries resulted in a scheduled disability, a 30 percent loss of the use of his right arm.

The claimant further appeals from a finding of the trial court on the amount of his basic weekly wage. As we view the situation the average weekly wage of $84.00 as found by the trial court is sufficient, when the statutory 60% is applied, to exceed the maximum weekly payment of $42.00, and any finding increasing the average weekly wage would not result in an increase in the award. Our conclusion that there is evidence to support the finding of a scheduled disability, therefore, renders any decision as to the amount of claimant's average weekly wage immaterial.

This court will not consider questions immaterial to a determination of the controlling issue. (*Greenwood v. Blackjack Cattle Co.,* 204 Kan. 625, Syl. ¶ 4, 464 P. 2d 281.)

The judgment is affirmed.